WEIMER, Justice.
|tWe granted certiorari in this case to determine the applicability of La. R.S. 23:1203.1, which provides, among other matters, for the adoption of a medical treatment schedule for use in making medical treatment decisions in workers’ compensation matters. The precise question before the court is whether La. R.S. 23:1203.1 applies to requests for medical treatment and/or disputes arising out of requests for medical treatment in cases in which the compensable accident or injury occurred prior to the effective date of the medical treatment schedule.
The Office of Workers’ Compensation (OWC) ruled that the medical treatment schedule applies to all requests for medical treatment submitted after its effective date, regardless of the date of injury or accident. The court of appeal reversed, | ¿holding that La. R.S. 23:1203.1 is substantive in nature and cannot be applied retroactively to rights acquired by a claim *274 ant whose work-related accident antedates the promulgation of the medical treatment schedule. For the reasons that follow, we disagree with the conclusion of the court of appeal and find that La. R.S. 23:1203.1 is a procedural statute and, thus, does not operate retroactively to divest a claimant of vested rights. As a result, the statute applies to all requests for medical treatment and/or all disputes emanating from requests for medical treatment after the effective date of the medical treatment schedule, regardless of the date of the work-related injury or accident.
FACTS AND PROCEDURAL HISTORY
Thelma Dardar injured her back in a work-related accident on October 21, 1999, while attempting to rise from a seated position on the floor. On January 30, 2008, the OWC approved a settlement between Ms. Dardar, her employer, Trinity United Methodist Preschool (“Trinity”), and her employer’s insurer, Church Mutual Insurance Company (“Church Mutual”). In exchange for a one time lump sum payment of $100,000, Ms. Dardar agreed to release Trinity and Church Mutual from any and all claims for indemnity she might possess, specifically reserving her right to continue to receive “medical benefits due pursuant to the Louisiana Workers’ Compensation Act.”
The instant litigation arose on October 18, 2012, with the filing of a LWC Form 1008, Disputed Claim for Compensation, by Ms. Dardar with the OWC. In her Disputed Claim, Ms. Dardar alleged that her employer and its insurer had failed to authorize office visits, medication refills and injections recommended by her physician, Dr. Rand Metoyer. In addition to seeking authorization for the requested treatment, Ms. Dardar requested an award of penalties and attorney’s fees for the Ralleged arbitrary and capricious refusal to approve the requested services. Trinity and Church Mutual answered the Disputed Claim, asserting an exception of prematurity based on Ms. Dardar’s failure to comply with the provisions of La. R.S. 23:1203.1 and submit a LWC Form 1009 to the medical director of the OWC prior to filing the Disputed Claim.
At a hearing, Ms. Dardar argued that the guidelines for seeking medical benefits contained in La. R.S. 23:1203.1 do not apply to her Disputed Claim because she was injured in 1999 and the settlement reserving her right to medical benefits was con-fected in 2008, prior to the effective date of the statute. The OWC disagreed, finding the date treatment is requested, and not the date of injury, controls the applicability of La. R.S. 23:1203.1. Because the claim for injections recommended by Dr. Metoyer was submitted after the statute’s effective date, judgment was entered maintaining the exception of prematurity. Ms. Dardar was ordered, consistent with the provisions of La. R.S. 23:1203.1, to “resubmit the request for injections to the payor on Form 1010 and to the Medical Director on Form 1009 within thirty days.”
Ms. Dardar applied for supervisory review of this adverse judgment. Her writ application was consolidated with a previously lodged appeal on unrelated rulings.[1] *275 Following briefing and argument, the court of appeal reversed the decision of the |4OWC. Church Mutual Insurance Company v. Dardar, 12-0659, 13-0037 (La.App. 4 Cir. 6/26/13), 119 So.3d 967.
Drawing upon the “general principle” that “the law in effect at the time of the injury generally governs an action for workers’ compensation benefits,” the court of appeal determined that a proper analysis should focus not on the date medical treatment is requested, but on the date of Ms. Dardar’s injury and whether the new medical guidelines should be applied retroactively to that injury. Id., 12-0659 at 10, 119 So.3d at 975, quoting Frith v. Riverwood, Inc., 04-1086, pp. 7-8 (La.1/19/05), 892 So.2d 7, 12-13. For this inquiry, the court of appeal employed the “two-fold” analysis outlined in Cole v. Celotex Corp., 599 So.2d 1058, 1063 (La.1992). The appellate court first determined that the “legislature did not expressly provide that the guidelines contained in La. R.S. 23:1203.1 would be applied retroactively.” Church Mutual Insurance Company, 12-0659 at 11, 119 So.3d at 975. It then found that “La. R.S. 23:1203.1, which contains guidelines that did not exist when Ms. Dardar was injured, creates and places rules, rights, and duties upon a claimant seeking reimbursement for recommended medical treatment” and, thus, is “substantive in nature.” Id. Because it is a substantive law, the court of appeal reasoned that La. R.S. 23:1203.1 cannot be applied retroactively to rights acquired by Ms. Dardar when she sustained her work-related injury in 1999. Id. Accordingly, the court granted Ms. Dardar’s application for supervisory review, reversed the ruling of the OWC, and remanded the matter for the consideration of attorney’s fees and penalties. Id.
On Trinity and Church Mutual’s application, we granted certiorari to review the correctness of the court of appeal’s decision. Church Mutual Insurance Company v. Dardar, 13-2351 (La.1/17/14), 130 So.3d 332.
|fiLAW AND ANALYSIS
Enacted by the legislature in 2009,[2] La. R.S. 23:1203.1 is the product of a combined endeavor by employers, insurers, labor, and medical providers to establish meaningful guidelines for the treatment of injured workers. 1 Denis Paul Juge, Louisiana Workers’ Compensation, § 13:6 (2d ed.2013). Dissatisfied with a process for obtaining needed medical treatment that was cumbersome, uncertain and often fraught with expense,[3] employers and their insurers perceived a need for guide *276 lines that would assure them that the treatment recommended by a medical provider was generally recognized by the medical community as proper and necessary. Id. In a similar vein, labor and their medical providers were concerned about the unreasonable delays regularly encountered in obtaining approval for treatment when disputes arose as to the necessity for the treatment and with having a procedure for obtaining approval for treatment that might vary from established guidelines. Id. Thus, La. R.S. 23:1203.1 was enacted with the express intent “that, with the establishment and enforcement of the medical treatment schedule, medical and surgical treatment, hospital care, and other health care provider services shall be delivered in an efficient and timely manner to injured employees.” La. R.S. 23:1203.1(L).[4]
| (jin its current form, La. R.S. 23:1203.1 instructs the Director of the OWC to “promulgate rules in accordance with the Administrative Procedure Act, R.S. 49:950 et seq., to establish a medical treatment schedule.” La. R.S. 23:1203.1(B). To this end, the Director is tasked with appointing a medical advisory council, to be comprised of at least one representative from eight enumerated areas of medical practice and a medical director. La. R.S. 23:1203.1(F). The council, with the assistance of the medical director, is directed to develop guidelines to be established and promulgated as the medical treatment schedule. La. R.S. 23:1203.1(E) and (G). These guidelines must meet specific criteria outlined in the statute.[5] Id. Once the |7medical treatment schedule is promulgated, the Director of the OWC and the medi *277 cal advisory council are charged with reviewing and updating the schedule no less often than once every two years. La. R.S. 2S:1208.1(H).
Louisiana R.S. 23:1203.1 further instructs, in relevant part:
I. After the promulgation of the medical treatment schedule, throughout this Chapter, and notwithstanding any provision of law to the contrary, medical care, services, and treatment due, pursuant to R.S. 23:1203, et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule. Medical care, services, and treatment that varies from the promulgated medical treatment schedule shall also be due by the employer when it is demonstrated to the medical director of the office by a preponderance of the scientific medical evidence, that a variance from the medical treatment schedule is reasonably required to cure or relieve the injured worker from the effects of the injury or occupational disease given the circumstances.
J. (1) After a medical provider has submitted to the payor the request for authorization and the information required by the Louisiana Administrative Code, Title 40, Chapter 27, the payor shall notify the medical provider of their action on the request within five business days of receipt of the request. If any dispute arises after January 1, 2011,[ 6] as to whether the recommended care, services, or treatment is in accordance with the medical treatment schedule, or whether a variance from the medical treatment schedule is reasonably required as contemplated in Subsection I of this Section, any aggrieved party shall file, within fifteen calendar days, an appeal with the office of workers’ compensation administration medical director or associate medical director on a form promulgated by the director. The medical director or associate medical director shall render a decision as soon as is practicable, but in no event, not more than thirty calendar days from the date of filing.
K.After the issuance of the decision by the medical director or associate medical director of the office, any party who disagrees with the decision, may then appeal by filing a “Disputed Claim for Compensation,” which is LWC Form 1008. The decision may be overturned when it is shown, by clear and convincing evidence, the | Rdecision of the medical director or associate medical director was not in accordance with the provisions of this Section.
M. (1) With regard to all treatment not covered by the medical treatment schedule promulgated in accordance with this Section, all medical care, services, and treatment shall be in accordance with Subsection D of this Section.
(2) Notwithstanding any other provision of this Chapter, all treatment not specified in the medical treatment schedule and not found in Subsection D of this Section shall be due by the employer when it is demonstrated to the medical director, in accordance with the principles of Subsection C of this Section, that a preponderance of the scientific medical evidence supports approval of the treatment that is not covered....
*278 Louisiana R.S. 23:1203.1, as amended by 2010 La. Act 619, § 1, became effective June 25, 2010.[7] The medical treatment schedule was promulgated and became effective in June 2011. See LR 37:1631 (June 2011); LAC 40:1.2001, et seq.
The question presented to this court for resolution is whether La. R.S. 23:1203.1 can be applied to cases, such as the present one, where the request for medical treatment and/or the dispute arising out of a request for medical treatment originated after the effective date of the medical treatment schedule, but where the com-pensable accident, injury or occupational disease occurred prior to that date.
Ms. Dardar maintains, and the court of appeal found, that the relevant date for determining the applicability of the statute is the date of injury or accident and that the statute effects a substantive change in the law that cannot be applied retroactively to accidents or injuries occurring before its effective date, as to do so would divest Ms. Dardar and similarly situated claimants of a vested right in contravention of the Ldue process clause of the United States and Louisiana Constitutions.[8] In opposition, Trinity and Church Mutual argue that the plain language of La. R.S. 23:1203.1(J) evidences an intent that the statute apply to any dispute over medical care, services and treatment due arising after January 1, 2011 (“If any dispute arises after January 1, 2011....”), and that it is the date a dispute arises, and not the date of accident or injury that determines the applicability of the statute. Further, they argue that La. R.S. 23:1203.1 is a procedural law which does not affect, impair or diminish Ms. Dardar’s right to reasonable and necessary medical treatment under La. R.S. 23:1203(A). Trinity and Church Mutual insist that this substantive right to reasonable and necessary medical treatment has not changed with the enactment of La. R.S. 23:1203.1. To the contrary, they contend that La. R.S. 23:1203.1 merely provides a new procedure for asserting the right and, as a result, there is no constitutional impediment to its application in this case.
Nothing in the language of the act creating La. R.S. 23:1203.1, 2009 La. Act 254, which became effective August 15, 2009, expressly states that the statute should be applied either prospectively or retroactively. Similarly, 2010 La. Act 619, amending La. R.S. 23:1203.1, is silent as to prospective or retroactive application. Therefore, we begin our analysis of the question presented with the proposition, uniformly acknowledged, that prospective operation of statutes is the general rule. See Cole, 599 So.2d at 1063. Planiol aptly explains the rationale behind this rule:
|1ft[New laws] should not have a retroactive effect because a fact and an act are governed by the law under whose aegis they took place, and because the solution cannot change on account of the circumstance that when the court rules, *279 the law governing such a fact or such an act is no longer the same.
1 M. Planiol, Treatise on the Civil Law § 243(A) at 175 (La.St.L.Inst.Trans.1959).
This general rule of prospective application, together with its exceptions, is codified in La. C.C. art. 6:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
The rule is reiterated in La. R.S. 1:2: “No Section of the Revised Statutes is retroactive unless it is expressly so stated.”[9]
When assessing the temporal effect of a new law, this court has interpreted La. C.C. art. 6 and La. R.S. 1:2 to require a two-fold inquiry. The first step involves determining whether the legislature expressed an intent concerning the retroactive or prospective application of the law. If the legislature did express such an intent, the inquiry is at an end. If no intent is expressed by the legislature, then that intent must be discerned by classifying the law as either substantive, procedural, or interpretive.[10] M.J. Farms, Ltd. v. Exxon Mobil Corp., 07-2371, p. 18 (La.7/1/08), 998 So.2d 16, [n29; Manuel v. Louisiana Sheriffs Risk Management Fund; 95-0406, pp. 8-9 (La.11/27/95), 664 So.2d 81, 86; Cole, 599 So.2d at 1063; St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 816 (La.1992).
However, before any discussion of the permissibility of the retroactive application of any new statute can be attempted and the two-fold analysis required by La. C.C. art. 6 embarked upon, it must first be ascertained whether application of the statute to the facts of the particular case would in fact qualify as a retroactive application. See Walls v. American Optical Corp., 98-0455 (La.9/8/99), 740 So.2d 1262, 1272-73. As this court explained in Austin v. Abney Mills, Inc., 01-1598, pp. 13-14 (La.9/4/02), 824 So.2d 1137, 1146-47:
In Walls, we utilized an analytical framework wherein the court first determines whether a statute actually operates retroactively when applied in a particular case, and, if so, the court then turns to the twofold inquiry under La. Civ.Code art. 6 to determine whether the new statute comes within the exceptions to the rule of prospective application and thereby permissively operates retroactively.
In Walls, the court acknowledged the difficulty of determining whether a statute operates retroactively when the statute must be applied to a case, like the present one, in which some operative facts predate the statute while others occurred after the *280 statute’s effective date. Walls, 98-0455 at 4, 740 So.2d at 1266. As the court explained, “[a] statute does not operate ‘retrospectively’ merely because it is applied in a case arising from conduct antedating the statute’s enactment, or upsets expectations based in prior law.” Id., 98-0455 at 4-5, 740 So.2d at 1266, quoting Landgraf v. USI Film Products, 511 U.S. 244, 269, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).
To determine whether a statute operates retroactively, the court adopted the formula set forth by Planiol:
[A] law is retroactive when it goes back to the past either to evaluate the conditions of the legality of an act, or to modify or suppress the effects 1 iaof a right already acquired. Outside of those conditions, there is no retroactivity.
PLANOIL, TREATISE ON THE CIVIL LAW § 243 at 174, quoted in Walls, 98-0455 at 5, 740 So.2d at 1267.
Employing that formula in the present case, we must determine, as an initial matter, whether La. R.S. 23:1203.1 either: (1) evaluates the conditions of the legality of a past act, or (2) modifies or suppresses the effects of a right already acquired.
Turning to the first question— whether, as applied to the facts of this case, La. R.S. 23:1203.1 goes back to evaluate the conditions of the legality of a past act — ■we find that it does not. Louisiana R.S. 23:1203.1 does not go back to regulate or evaluate the legality of conduct or activity (an accident, injury, or occupational disease) occurring before its effective date. It does not, for example, create a cause of action which attaches new consequences to past events. See and compare, Anderson v. Avondale Industries, Inc., 00-2799, p. 8 (La.10/16/01), 798 So.2d 93, 100-01 (former La. C.C. art. 2315.3, creating a cause of action for punitive damages for certain enumerated conduct as applied to facts of case would be an impermissible retroactive application because it would go back to the past to evaluate the conditions of the legality of defendants’ conduct, which occurred before the enactment of former La. C.C. art. 2315.3). Rather, by its express terms, the statute concerns itself only with conduct or activity, ie., medical treatment, occurring after the effective date of the medical treatment schedule. See La. R.S. 23:1203.1(1) (“After the promulgation of the medical treatment schedule ... medical care, services, and treatment due, pursuant to R.S. 23:1203, et seq., by the employer to the employee[.]”) and (J)(l) (“If any dispute arises after January 1, 2011, as to whether the recommended care, services, or treatment!.]”). Because La. R.S. 23:1203.1 does not evaluate the | ^conditions of liability or attach new legal consequences to past acts, it does not, at least for those reasons, operate retroactively in the instant case.
The second situation in which a law operates retroactively, as explained by Planiol, is when its application would “go back to the past” to “modify or suppress the effects of a right already acquired.” As the court explained in Walls:
This principle is well known in our jurisprudence governing the accrual of causes of action and vested rights. If a party acquires a right to assert a cause of action prior to a change in the law, that right is a vested property right, protected by the due process guarantees. If retroactive application of the law would divest that party of such a vested right, then retroactive application could be constitutionally impermissible.
Walls, 98-0455 at 8; 740 So.2d at 1268, citing Cole, 599 So.2d at 1061. “Generally, the determinative point in time separating prospective from retroactive application of an enactment is the date the cause of action accrues.” Cole, 599 So.2d at 1063. *281 Once a party’s cause of action accrues, it becomes a vested property right. Id., citing Crier v. Whitecloud, 496 So.2d 305, 308 (La.1986); Faucheaux v. Alton Ochsner Medical Foundation Hospital and Clinic, 470 So.2d 878, 879 (La.1985); Lott v. Haley, 370 So.2d 521, 524 (La.1979); Burmaster v. Gravity Drainage District No. 2, 366 So.2d 1381,1387 (La.1978); Marcel v. Louisiana State Department of Public Health, 492 So.2d 103, 109-10 (La.App. 1 Cir.), writ denied, 494 So.2d 334 (La.1986). Statutes enacted after the acquisition of such a vested property right cannot be applied so as to divest a party of his or her vested right in the cause of action because such a retroactive application would contravene due process guarantees. Id., citing Cole, 599 So.2d at 1061; Faucheaux, 470 So.2d at 879. A right is vested when “the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. The right must be absolute, complete and unconditional, independent of a contingency, and a mere | ^expectancy of future benefit ... does not constitute a vested right.” Sawicki v. K/S Stavanger Prince, 01-0528, p. 10 (La.12/7/01), 802 So.2d 598, 604, quoting Tennant v. Russell, 214 La. 1046, 39 So.2d 726 (1949).
Thus, in order to determine whether La. R.S. 23:1203.1 operates retroactively under the second situation identified by Planiol, ie., whether it affects a right already acquired or vested, we must determine whether Ms. Dardar had a cause of action that accrued prior to the statute’s effective date and the promulgation of the medical treatment schedule. A cause of action has been defined as “the state of facts which gives a party a right to judicially assert an action against the defendant.” Udomeh v. Joseph, 11-2839, p. 10 (La.10/26/12), 103 So.3d 343, 349 n. 3, quoting Trahan v. Liberty Mut. Ins. Co., 314 So.2d 350, 353 (La.1975). A cause of action accrues when a party has the right to sue. M.J. Farms, Ltd., 07-2371 at 25, 998 So.2d at 34; Cole, 599 So.2d at 1063 n. 15.
The cause of action being asserted in this case is a statutory one, seeking medical expenses pursuant to La. R.S. 23:1203(A). That statute obligates the employer of an injured worker to furnish “all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedieal treatment recognized by the laws of this state as legal.” According to the plain words of the statute, an injured employee is not entitled to payment for all future medical treatment occasioned by an accident; rather, the employer’s liability is limited to that which is necessary. Thus, in order to state a cause of action for and recover medical expenses authorized by the statute, an injured worker must require medical expenses that are reasonably necessary for the treatment of a medical condition caused by a work injury. Frye v. Olan Mills, 44,192, 44,193, 44,194, 44,195, p. 4-5 (La.App. 2 Cir. 4/8/09), 7 So.3d 201, 204-05 (“A workers’ compensation claim may recover medical | i,⅞expenses that are reasonably necessary for the treatment of a medical condition caused by a work-related injury. The plaintiff must prove the necessity of the treatment and the causal connection between the treatment and the employment-related accident[.]”); Roussell v. St. Tammany Parish School Bd., 04-2622, pp. 13-14 (LaApp. 1 Cir. 8/23/06), 943 So.2d 449, 460. Notably, because the employer’s obligation under La. R.S. 23:1203(A) does not extend to all future medical treatment, but only that which is necessary, the employer’s liability for medical expenses arises only as those expenses are incurred. Lester v. Southern Cas. Ins. Co., 466 So.2d 25, 27 (La.1985); Harrington v. Coastal Const. & Engineering, 96-681, p. 5 (La. *282 App. 3 Cir. 12/11/96), 685 So.2d 457, 460-61.
Under this statutory framework, then, the facts which give rise to a party’s right to judicially assert an action under La. R.S. 23:120S(A) are: (1) a work-related injury or accident and (2) a medical treatment that is necessary and causally connected to the injury. In other words, the operative facts giving rise to a cause of action under La. R.S. 23:1203(A) are the injury and the treatment necessitated thereby. The fact which triggers the employer’s obligation is not simply the occurrence of an accident or injury, but the necessity of “drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal.” La. R.S. 23:1203(A). Until a medical (or nonmedical) treatment is necessary, the right to receive or be reimbursed for treatment is a “mere expectancy of future benefit” and not “absolute, complete and unconditional, independent of a contingency,” i.e., vested. Saivicki, 01-0528 at 10, 802 So.2d at 604.
In this case, while it is established that Ms. Dardar’s injury occurred in 1999, prior to the effective date of La. R.S. 23:1203.1 and the medical treatment schedule, the request for medical treatment that precipitated this action — the request by Dr. | ^Metoyer for authorization for injections — did not occur until after the promulgation of the medical treatment schedule. Since a cause of action under La. R.S. 23:1203(A) does not arise until an injury or accident occurs and a medical service or treatment is necessary, it follows that Ms. Dardar did not acquire a property right or vested interest in her cause of action prior to the effective date of La. R.S. 23:1203.1 and the medical treatment schedule.[11] Thus, application of La. R.S. 23:1203.1 to the facts of this case does not go back to the past to modify or suppress the effects of a right already acquired. The statute, as applied to this case, does not operate retroactively under the second situation described by Planiol.
There is a further, equally compelling reason for reaching the conclusion that La. R.S. 23:1203.1 does not operate retroactively in this case to divest Ms. Dardar of a vested property right. It is well-settled that “no one has a vested right in any given mode of procedure.” Sawicki, 01-0528 at 10; 802 So.2d at 604-05, quoting Denver & Rio Grande Western R. Co. v. Brotherhood of R.R. Trainmen, 387 U.S. 556, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967). Because we find, contrary to the conclusion of the court of appeal, that La. *283 R.S. 23:1203.1 is a procedural statute, rather than a substantive rule of law, there is no constitutional impediment to its application in this case.
|17By definition, “[sjubstantive laws establish new rules, rights, and duties or change existing ones. Procedural laws prescribe a method for enforcing á substantive right and relate to the form of the proceeding or the operation of the laws.” Segura v. Frank, 93-1271, 93-1401, (La.1/14/94), 630 So.2d 714, 723, citing St. Paul Fire & Marine Ins. Co., 609 So.2d at 817; Ardoin v. Hartford Acc. & Indem. Co., 360 So.2d 1331, 1339 (La.1978); Graham v. Sequoya Corp., 478 So.2d 1223, 1226 (La.1985); Terrebonne v. South La-fourche Tidal Control Levee Dist., 445 So.2d 1221,1224 (La.1984).
In this case, after examining the provisions of La. R.S. 23:1203.1, the court of appeal found that the statute “contains guidelines that did not exist when Ms. Dardar was injured,” and that these guidelines “create[] and placet] rules, rights, and duties upon a claimant seeking reimbursement for recommended treatment.” Church Mutual, 12-0659, 13-0037 at 11, 119 So.3d at 975. In other words, the court of appeal concluded that the medical treatment schedule itself creates substantive rules, rights and duties or changes existing ones.[12] Before this court, Ms. Dardar argues that the conclusions of the court of appeal are correct. She maintains that La. R.S. 23:1203.1 effects a substantive change in the law because it changes the definition of medical care, services and treatment due under La. R.S. 23:1203(A) by limiting medical care to that which is listed in the medical treatment schedule, diminishing her | fright to receive medical care and altering the obligations of her employer to furnish that care in the process. See La. R.S. 23:1203.1(1) (“After the promulgation of the medical treatment schedule ... medical care, services, and treatment due, pursuant to R.S. 23:1203, et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule.”). We disagree.
As a preliminary matter, it is important to identify the substantive right that Ms. Dardar seeks to have vindicated. That right is the one set forth in La. R.S. 23:1203(A), which obligates the employer of an injured worker to furnish “all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this' state as legal....” No changes to the language of this statute were effected with the enactment of La. R.S. 23:1203.1. Rather, the language of the statute and the obligation set forth therein remains unchanged by the legislature. Medical necessity remains the touchstone for an employer’s obligation to pay for medical care.
*284 Ms. Dardar, and the court of appeal by implication, would have us conclude differently. She maintains that with the enactment of La. R.S. 28:1203.1 and the promulgation of the medical treatment schedule, the substantive obligation under La. R.S. 23:1203(A) was modified and superceded. However, we find nothing to suggest that the enactment of La. R.S. 23:1203.1 served to repeal or overrule the right to necessary medical treatment set forth in La. R.S. 23:1203(A). “It is well settled that repeals by implication are not favored and will only be permitted where two acts are irreconcilably inconsistent and repugnant.” Silver Dollar Liquor, Inc. v. Red River Parish Police Jury, 10-2776, p. 13 (La.9/7/11), 74 So.3d 641, 649. Louisiana R.S. 23:1203 and 23:1203.1 are not “irreconcilably inconsistent and repugnant.” Rather, they are laws on the same subject matter which must and can be interpreted in preference to each other. See La. C.C. art. 13 (“Laws on the same subject matter must be interpreted in reference to each other.”).
Ms. Dardar’s argument that the enactment of La. R.S. 23:1203.1 substantively changed and replaced the obligation of the employer to provide necessary medical care under La. R.S. 23:1203(A) is, at its heart, premised on the contention that La. R.S. 23:1203.1 and through it, the medical treatment schedule, pre-deny or exclude previously available care. A reading of the statute reveals this is not the case.
With the express intent of delivering health care services to injured employees “in an efficient and timely manner,”[13] La. R.S. 23:1203.1 adopts evidence-based medicine as the guidepost for assessing whether the medical care required to be provided under La. R.S. 23:1203 is necessary.[14] To that end, La. R.S. 23:1203.1 requires the promulgation of a medical treatment schedule, which consists of a list of preau-thorized procedures, administratively developed and approved according to criteria set forth by the statute.[15] These preau-thorized procedures provide a benefit and advantage to injured workers and their treatment providers who are relieved of the burden of establishing the medical necessity of the preauthorized procedures and, at the same time, impose a clear-cut obligation on employers.[16] By their terms, La. R.S. 23:1203.1 and the medical treatment schedule do not exclude any particular care. Instead, these provisions represent and reflect a rational policy choice by the legislature to confer authority on the Director of the OWC, with the assistance of the medical advisory council and the medical director, to determine in advance the | ^medical necessity for certain medical care, in particular circumstances, in order to avoid case-by-case disputes and variations and to streamline the process. As regards medical procedures not included in the medical treatment schedule and, thus, not presumptively deemed necessary, claimants can overcome the predetermination by seeking review and/or a variance from the medical director of the OWC.[17] And, in the event a variance is denied, claimants have resort to another administrative level of review conducted by the OWC judge.[18]
In this way, La. R.S. 23.T203.1 and the medical treatment schedule create rebut-table presumptions as to the necessary *285 treatment required by La. R.S. 23:1203(A). We have long recognized that statutes creating rebuttable presumptions are procedural. Tullier v. Tullier, 464 So.2d 278, 282 (La.1985). To hold otherwise, and determine that the medical treatment schedule creates, as Ms. Dardar suggests, irrebuttable presumptions as to what treatment is necessary and is therefore substantive, would, as Judge Caraway points out in his thoughtful dissent in Wal-Mart Associates, Inc., produce an absurd result:
[La. R.S. 23:1203.1(H) ] requires that a new Medical Treatment Schedule be promulgated at least once every two years. This reflects the legislature’s recognition of the evolving nature of the practice of medicine as new procedures are developed for certain conditions. If every new promulgation of the Medical Treatment Schedule is to be prospective only, with regard to when a claimant’s injury occurs, there would be different sets of law[s] effective for every two-year period. This would make the administration of workers’ compensation benefits extremely cumbersome to the point of absurdity.
Wal-Mart Associates, Inc., 132 So.3d at 495 (Caraway, J. dissenting). Fortunately, our rules of statutory construction do not permit us to condone an interpretation of La. R.S. 23:1203.1 so at odds with the obvious intent and purpose of law to provide a | ⅞) streamlined process for delivering necessary medical care and treatment to injured workers “in an efficient and timely manner,” based on the most current and “best evidence ... about the care of individual patients.” La. R.S. 23:1203.1(0 and (L); see Duckworth v. Louisiana Farm. Bureau Mut. Ins. Co., 11-2835, p. 20 (La.11/2/12), 125 So.3d 1057, 1069 (rejecting an interpretation of a provision of law that would be at odds with the plain words and obvious intent of the statute because to do so would violate well-settled rules of statutory construction).
Louisiana R.S. 23:1203.1 and the medical treatment schedule it implements, while changing the process for determining medical necessity by making the OWC judge’s determination of necessary medical treatment secondary to the initial resolution of a medical benefit dispute by the medical treatment schedule, and thereafter the medical director, do not deprive claimants of any right to seek medically necessary care or alter the ongoing substantive obligation of employers to pay for such care under La. R.S. 23:1203(A). While referencing the substantive right conferred by La. R.S. 23:1203(A), La. R.S. 23:1203.1 does not alter it. Rather, it facilitates the implementation of that right. The statute is clearly procedural.
The alternative arguments advanced by Ms. Dardar, and embraced by several of courts of appeal that have considered the issue, likewise do not convince us that La. R.S. 23:1203.1 has a substantive component. For example, Ms. Dardar contends that La. R.S. 23:1203.1 is substantive in nature because it changes the previous procedure for obtaining judicial review of determinations of whether a particular treatment is medically necessary. According to Ms. Dardar, whereas prior to the statute, a claimant seeking requested medical treatment could submit the request directly to the employer, and if the request was denied, file a disputed claim for compensation and obtain a hearing before the OWC, under La. R.S. 23:1203.1(J), a 122claimant must now seek an appeal to the medical director of the OWC before filing the disputed claim for compensation. Relying on Romero v. Garan’s, Inc., 13-482 (LaApp. 3 Cir. 12/26/13), 130 So.3d 451, 459, Ms. Dardar argues that this “additional hurdle” that “an injured employee is required to cross” has a substantive effect. *286 The problem with this argument is that it fails to recognize that the “additional hurdle” that La. R.S. 23:1203.1(J) interjects concerns itself solely with the remedy for enforcing a substantive right; ie., with the procedure for resolution of claims seeking reimbursement for necessary medical care. As such, La. R.S. 23:1203.1(J) bears all the earmarks of a procedural statute.
Citing Wal-Mart Associates, Inc., Ms. Dardar additionally argues that La. R.S. 23:1203.1 has a substantive component because an appeal to OWC under La. R.S. 23:1203.1(K) imposes a more stringent burden of proof on the claimant. This argument, as framed by the court of appeal, is as follows: “[P]rior to the enactment of LSA-R.S. 23:1203.1, the claimant was required to prove the causal connection between the treatment and the work-related accident by a preponderance of the evidence. Under the Guidelines, a claimant seeking judicial review of the medical director’s decision must prove the necessity of the sought-after medical treatment by clear and convincing evidence.” Wal-Mart Associates, Inc., 47,998 at 15-16, 132 So.3d at 492 (citations & footnote omitted). In essence, Ms. Dardar argues that the change in burden of proof is substantive.[19] However, statutes changing burdens of proof have long been recognized by this court as procedural. Sudwischer v. Estate of Hoffpauir, 97-0785, p. 9 (12/12/97), 705 So.2d 724, 729; Ardoin, 360 So.2d at 1339. As the court explained in Sudwischer, “the change in the burden of proof from preponderance of the evidence to clear and convincing falls under the definition of a procedural law in that it prescribes a method for enforcing a substantive right.” Sudwischer, 97-0785 at 10, 705 So.2d at 729. The substantive right in this ease is the right under La. R.S. 23:1203 to receive necessary medical care. The method for enforcing that right, by clear and convincing evidence, is procedural. Furthermore, as previously indicated, we note that under La. R.S. 23:1203.1(1) and (M)(2), the claimant’s initial burden before the medical director remains one of proof by a preponderance of the evidence.
The remaining arguments offered by Ms. Dardar for finding that La. R.S. 23:1203.1 is substantive either focus on policy considerations more appropriately addressed to the legislature,[20] or on the premise that she had a vested right in the former procedure for establishing medical necessity.[21] As we have explained, howev *287 er, “no one has a vested right in any given mode of procedure.” Sawicki, 01-0528 at 10, 802 So.2d at 604-05, quoting Denver & Rio Grande Western R. Co., 887 U.S. at 563, 87 S.Ct. 1746. We do not find these arguments persuasive.
In the final analysis, we find that while the process by which necessary medical care is requested and administered is changed with the enactment of La. R.S. 12423:1203.1 and the promulgation of the medical treatment schedule, thereby upsetting expectations, nonetheless implementation of the medical treatment schedule does not deprive a claimant of the substantive right to necessary medical care.[22] As a procedural statute, La. R.S. 23:1203.1 does not “go back to the past” to “modify or suppress the effects of a right already acquired” and, thus, under the second situation identified by Planiol, does not operate retroactively in this case. This is because procedural statutes like La. R.S. 23:1203.1 become operative only when and if the remedy they serve to facilitate is invoked. If that remedy is invoked after the statute’s enactment and the promulgation of the medical treatment schedule, the statute operates in the future regardless of the time of the events giving rise to the cause of action. This is precisely, we believe, the intent and rationale adopted by the legislature when it focused the statute’s application, in La. R.S. 23:1203.1(J)(1), on “any dispute arising] after January 1, 2011.” Thus, we agree with Judge Caraway’s assessment that with the enactment of La. R.S. 23:1203.1, there is no substantive dislodging of past benefits. The statute procedurally addresses a remedy, ie., “any dispute,” for any new medical need arising in the future. Wal-Mart Associates, Inc., 132 So.3d at 493 (Caraway, J., dissenting).
CONCLUSION
For the reasons assigned, we conclude that application of La. R.S. 23:1203.1 in the instant case does not constitute a retroactive application.[23] The statute does not 12sgo back to the past to either evaluate the conditions of the legality of an act, or to modify or suppress the effects of a right already acquired, or vested. Effectively, La. R.S. 23:1203.1 is a procedural vehicle that concerns the procedure for enforcing a substantive right. As such, it does not impinge on or lessen the substantive right to necessary medical treatment conferred by La. R.S. 23:1203. Rather, it applies prospectively to all requests for medical treatment and/or disputes arising out of *288 requests for medical treatment arising after the effective date of La. R.S. 23:1203.1 and the medical treatment schedule, regardless of the date of accident. Since Ms. Dardar’s request for injections was submitted after the effective date of La. R.S. 23:1203.1 and the medical treatment schedule, Trinity and Church Mutual’s exception of prematurity should have been sustained. The contrary conclusion of the court of appeal is reversed, and the judgment of the OWC, maintaining the exception of prematurity and ordering Ms. Dardar to “re-submit the request for injections to the payor on Form 1010 and to the Medical Director on Form 1009 within thirty days” of the finality of this decision, is reinstated. The matter is remanded to the OWC for further proceedings.
REVERSED AND REMANDED.

. Ms. Dardar had previously appealed an interlocutory judgment granting her employer's motion to compel a second medical opinion, ordering her to submit to the examination and to complete the necessary forms, suspending her medical benefits retroactively, and assessing her attorney with sanctions. The judgment also denied a motion to dismiss and for sanctions filed by Ms. Dardar and overruled exceptions of prematurity, no right of action, and no cause of action asserted by her. On review, the court of appeal converted the appeal of the interlocutory judgment to an application for supervisory review and de *275 nied Ms. Dardar’s claims (with the exception of the appeal of the award of sanctions) as moot because Ms. Dardar had, in the interim, completed the necessary forms and submitted to the examination. The court of appeal then reversed the judgment awarding sanctions against Ms. Dardar’s counsel. Church Mutual Insurance Company, supra. The court of appeal's resolution of these unrelated matters is not before this court, no party having filed an application seeking review of the court of appeal’s decision on these issues.

. 2009 La. Act 254, § 1, effective August 15, 2009.

. Prior to the enactment of La. R.S. 23:1203.1, the determination of what medical treatment was appropriate was entrusted in the first instance to an insurer, which was tasked with evaluating any request for medical treatment in excess of $750. La. R.S. 23:1142. If a dispute arose as to whether a particular treatment was reasonable and necessary, the task of resolving that dispute was left to an OWC judge, who would resolve that dispute on an ad hoc basis, generally after a second medical opinion examination, perhaps an OWC-ordered independent medical examination, and on competing testimony of medical providers as to what was, in their respective opinions, "medically necessary” under the circumstances.

. While unnecessary to a proper resolution of the issues presented, for the sake of thoroughness, we have examined the legislative history of Act 254 of 2009 and find nothing remarkable in its genesis or progression through the legislative process. The bill originated in the Senate as SB 303 and was passed by unanimous vote. The final vote in the House was 69 to 35 in favor of passage, with the floor debate centered almost entirely on a controversial amendment unrelated to the contents of the bill that was ultimately removed from the final Act. The Bill passed through the Senate and House Committees on Labor and Industrial Relations with favorable reports, and testimony substantiating the notion that the bill was a collaborative endeavor on the part of employers, insurers, labor and the medical community.

. These criteria are outlined in La. R.S. 23:1203.1(C) and (D), as follows:
C. The schedule shall be developed by the conscientious, explicit, and judicious use of current best evidence in making decisions about the care of individual patients, integrating clinical expertise, which is the proficiency and judgment that clinicians acquire through clinical experience and clinical practice, with the best available external clinical evidence from systematic research.
D. The medical treatment schedule shall be based on guidelines which shall meet all of the following criteria:
(1) Rely on specified, comprehensive, and ongoing systematic medical literature review.
(2) Contain published criteria for rating studies and for determining the overall strength of the medical evidence, including the size of the sample, whether the authors and researchers had any financial interest in the product or service being studied, the design of the study and identification of any bias, and the statistical significance of the study.
(3) Are current and the most recent version produced, which shall mean that documented evidence can be produced or verified that the guideline was developed, reviewed, or revised within the previous five years.
(4) Are interdisciplinary and address the frequency, duration, intensity, and appropriateness of treatment procedures and modalities for all disciplines commonly performing treatment of employment-related injuries and diseases.
(5) Are, by statute or rule, adopted by any other state regarding medical treatment for workers’ compensation injuries, diseases, or conditions.

. The statute, as originally enacted, specified a date of September 30, 2010. See 2009 La. Act 254, § 1, effective August 15, 2009. By 2010 La. Act 619, § 1, effective June 25, 2010, the current date of January 1, 2011, was substituted.

. See footnote 6, supra.

. The Fourth Circuit is not the only court of appeal to have considered and ruled on this issue. The First, Second and Third Circuits have all reached similar conclusions, albeit with vigorous dissents, in the cases arising in the Second and Third Circuits. See Courville v. Turner Indus. Group, LLC, 13-0711 (La. App. 1 Cir. 7/15/13) (unpub. writ action); Davis v. Kentwood Brick & Tile Manufacturing Company, Inc., 13-1067, 13-1075 (La.App. 1 Cir. 2/12/14) (unpub. writ action); Wal-Mart Associates, Inc. v. Wooden, 47,998, 48,051, 48,437 (La.App. 2 Cir. 1/22/14), 132 So.3d 482 (en banc); Romero v. Garan's, Inc., 13-482 (La.App. 3 Cir. 12/26/13), 130 So.3d 451 (en banc). But see Cook v. Family Care Services, Inc., 13-108 (La.App. 3 Cir. 8/28/13), 121 So.3d 1274, writ granted, 13-2326 (La. 1/17/14), 130 So.3d 332 (decided contemporaneously with this case).

. While this statute, unlike La. C.C. art. 6, does not distinguish between substantive, procedural and interpretative laws, the jurisprudence has consistently regarded the two provisions as co-extensive, with La R.S. 1:2 being construed to apply only to substantive, and not procedural or interpretative legislation. See M.J. Farms, Ltd., 07-2371 at 17, 998 So.2d at 29; Manuel v. Louisiana Sheriffs Risk Management Fund, 95-0406 at 8, 664 So.2d at 85-86; St. Paul Fire & Marine Ins. Co., 609 So.2d at 816.

. This two-step inquiry is directed toward ascertaining the legislature’s intent regarding the prospective or retroactive application of a statute. The legislature's power to enact retroactive laws is limited by the Due Process and Contract Clauses of the Federal and State Constitutions. Bourgeois v. A.P. Green Indus., Inc., 00-1528, pp. 8-9 (La.4/3/01), 783 So.2d 1251, 1258-1259, citing U.S. Const, amend. XIV, § 1; U.S. Const, art. I, § 10; La. Const, art. I, § 2; La. Const, art. I, § 23. Thus, where it is determined that the legislature intended retroactive application of a new statute, the inquiry is not truly at an end, and the constitutional analysis must follow. See Id.

. In reaching this conclusion, we are mindful of our statement in Frith v. Riverwood, Inc., supra, relied on by the court of appeal in this case, that the general rule is that the law in effect at the time of a work-related accident applies to workers’ compensation claims and that a "triggering mechanism” that occurs after the accident "cannot be applied to divest injured employees of their right to indemnity benefits under the law at the time of the work-related accident in the absence of some affirmative act on the employee’s part that results in forfeiture of the benefits.” Frith, 04-1086 at 11, 892 So.2d at 15 (emphasis added). However, Frith and the case on which it relied for the "general rule,” Bruno v. Harbert Intern. Inc., 593 So.2d 357 (La. 1992), dealt exclusively with a claimant’s entitlement to indemnity benefits. The courts of this state have long recognized that the right to medical expenses is separate and distinct from the right to indemnity benefits and that there can be recovery for medical expenses even in the absence of an award of indemnity benefits. Bonvillain v. Preferred Industries and LWCC, 04-0849, p. 16 (La.App. 1 Cir. 5/27/05), 917 So.2d 1, 10; Ridlen v. St. Charles Manor Nursing Ctr., Inc., 94-275, p. 4 (La.App. 5 Cir. 10/12/94), 644 So.2d 244, 247, writ denied, 94 — 3039 (La.2/3/95), 649 So.2d 410.

. A similar conclusion was reached by the First Circuit in an unpublished decision. In Davis, 13-1067, 13-1075, the court looked to the medical treatment schedule to determine whether La. R.S. 23:1203.1 establishes new rules, rights, and duties or changes existing ones. Noting that "[w]hen applicable, LAC 40:1.2021(E) now requires psychological evaluation prior to further treatment. Louisiana Administrative Code 40:I.2023B imposes the requirement for a preliminary neuro-muscu-loskeletal examination,” the court reasoned that the medical guidelines impose new requirements on an injured worker seeking necessary treatment, that if not complied with, "could now preclude a claimant from treatment to which he may have previously been entitled.” Davis, 13-1067, 13-1075 at 12-13. Therefore, the court found, the medical guidelines implemented through La. R.S. 23:1203.1 are substantive and can be applied prospectively only. Ultimately, for the reasons stated infra, we find this analysis, which ignores the evidentiary and, therefore, procedural nature of the requirements, flawed.

. See La. R.S. 23:1203.1(L).

. See La. R.S. 23:1203.1(C).

. See La. R.S. 23:1203.1(B),(C), and (D).

. See La. R.S. 23:1203.1(1).

. See La. R. S. 23:1203.1 (I) and (J).

. See La. R.S. 23:1203.1(K).

. In a similar vein, an amicus curiae brief submitted to the court argues that La. R.S. 23:1203.1 has a substantive effect because it imposes a heightened burden of proof on claimants whose medical providers must now document "functional improvement” in seeking approval for medical treatment, making the "ability to return to work” a pre-condition to treatment. Aside from the fact that the "burden of proof” is, as noted above, a procedural matter, we find nothing in the medical treatment schedule itself nor are we pointed to any language therein that equates “functional improvement” with the "ability to return to work.” The two terms are not synonymous.

. For example, Ms. Dardar argues that the implementation of the medical treatment schedule and the additional obligations it imposes on medical providers will decrease the number of physicians willing to treat injured workers and, in the process, impact the claimant’s right to the physician of his or her choice. Further, she complains the implementation of the statute will impact her ability to succeed in actions seeking penalties and attorney’s fees under La. R.S. 23:1201 because the involvement of the OWC in the process of approving medical treatment requests will, for all practical purposes, insulate employers from liability for the refusal to pay medical benefits.

.Thus, Ms. Dardar complains that the statute imposes new evidentiary obligations on medical providers, requiring them to offer scientific medical evidence to support a variance, eliminates the weight previously afford *287 ed to the recommendations of treating physicians, and eliminates her discovery rights.

. Nor has Ms. Dardar demonstrated that she has suffered such a deprivation. With the maintaining of the exception of prematurity by the OWC, Ms. Dardar has not been denied the injections she has requested; she is merely required to comply with the new procedure for determining medical necessity.

. Our conclusion in this regard is not affected by Ms. Dardar’s alternative argument that the 2008 consent judgment settling her entitlement to indemnity benefits conferred upon her a vested right to receive medical benefits as they existed on the date of the judgment. The judgment merely states that it is "exclusive of medical benefits due pursuant to the Louisiana Workers' Compensation Act.” As the OWC judge noted in oral reasons, "all [the judgment] did was leave opened the medical benefits to which she would be entitled under the Act. It didn’t specify, every year you’ll get six injections from Metoyer, you’ll get these prescriptions refilled, so on and so forth.” In other words, the settlement merely reserves Ms. Dardar’s right to seek future benefits as they may arise. The judgment does not confer on Ms. Dardar a vested right to receive medical benefits according to the law in effect at the time of the judgment. Had they done so, Ms. Dardar would arguably be limited to that treatment available in 2008, a result that she does not suggest.