PETTIGREW, J.
|2The defendant, the Iberville Parish School Board, appeals a judgment from the Office of Workers’ Compensation (OWC) finding that the plaintiff, Delores Greavis (Ms. Greavis), sustained a compen-sable injury in the course and scope of her employment with the School Board, and ordering it to pay to Ms. Greavis benefits and medical treatment related to her inju *775 ry (including two knee surgeries). After a thorough review of the record, we affirm.
FACTUAL BACKGROUND
At the time of the incident at issue, Ms. Greavis had been an educator for over thirty-six years. She received a bachelor of science degree in special education and was initially hired with the Pointe Coupe Parish School System on August 19, 1979. Six years later, in 1981, she went to work as a special education teacher at North Iberville Elementary, kindergarten through sixth grade, and had been an educator there for thirty years when this incident occurred. While at North Iberville Elementary, her job entailed caring for all special needs students, from mild/moderate to severe needs, including students having bipolar disease, autism, and all segments of “special needs.” Those special needs students were resourced, meaning that they would spend part of the day in regular education, and would be sent to Ms. Greavis’s care any time there was a behavioral problem or other special need that required particular attention. She described those needs as “broad spectrum” including physical exertion when the behavior so required; and under her care, she would attempt to assuage the students’ behavior so that they would work on reinforcing the skills that they had been doing in the regular classroom.
On November 1, 2011, she was in a separate classroom working with three special needs students, when she was summoned by a fifth-grade student who knocked on the door and told her a teacher in a regular classroom needed help with a fifth-grade autistic student who was out of control. The out-of-control student was using profane language, throwing things, pushing desks, screaming, kicking, etc. Ms. Greavis immediately went to get the student to bring her to her classroom. Once Ms. Greavis and |aher aides (two “paraprofessionals”) got the student to the special needs classroom, her behavior continued to be out of control. The other three special needs students who had been with Ms. Greavis were sent back to the regular classroom while Ms. Greavis and her two aides attempted to calm the out-of-control student. The student continued to scream profanities, throw things, and abuse herself physically; and during the process of trying to control her behavior, Ms. Greavis was kicked several times, once quite severely on the side of her left leg, just below the knee. At that moment, Ms. Greavis had to back away from the student and the aides took over, still trying to get the student under control.
According to school procedures, the principal of the school was contacted. Ms. Greavis went to telephone the student’s parents to ask them to come to the school and pick up the student. Also, in keeping with school procedures, Ms. Greavis filled out a written behavior report, and turned it in to the Dean of Students. That report, which was entered into evidence, reflects that Ms. Greavis was scratched and kicked during the incident.
Two to three days following the incident, Ms. Greavis also typed a detailed “Statement of the Incident” and turned it in to the principal. That incident report, also introduced into evidence, reflects that during the process of attempting to control the student, Ms. Greavis was scratched, her feet were stomped on, and she received a hard kick to her left knee. During the trial of this matter, Ms. Greavis indicated that this particular child had been her student since she was in the second grade, and that she had always exhibited physical behavior, but that previously, the student was smaller and Ms. Greavis was able to handle her - better. However, at the time of the incident at *776 issue, the child was thirteen years old, and was bigger and taller than Ms. Greavis, making it more difficult for Ms. Greavis to restrain her.
Although candidly admitting that, given the nature of her educational role with special needs students, she had been struck by students in the past, Ms. Greavis testified that the incident at issue was the first one in her entire career that caused her serious injury for which she ultimately filed a compensation claim. She indicated in her claim for workers’ compensation benefits (discussed below) that the kick to her knee was a hard |4one and that it immediately bruised and hurt, but that the more severe pain and swelling began weeks afterwards. (More detailed information about the injury will be provided later herein.)
PROCEDURAL HISTORY
On March 26, 2012, Ms. Greavis filed a workers’ compensation form 1007 in which she claimed to have suffered a compensa-ble injury resulting from being kicked in the left knee by an out-of-control student on November 1, 2011. In that report, Ms. Greavis indicated that the student “kicked [her] on the left leg several times. Leg bruised, however, I did not think that there would be permanent damage. Pain [and] swelling began weeks afterwards.” She described the injury as one to her left knee, resulting in surgery. However, on July 30, 2012, she received a letter from her employer’s workers’ compensation insurer notifying her that the claim was being denied and that she should file for reimbursement through her own personal health carrier.
On August 12, 2012, Ms. Greavis filed a disputed claim for compensation with the OWC, again claiming she was assaulted by a student and incurred injury to her left knee while in the course and scope of her employment with the Iberville Parish School Board. She identified as witnesses the two paraprofessionals in the classroom with her that day, Mrs. Rita Thomas and Mrs. Doris Knatt. She further identified the health care professionals who had examined and/or treated her as Dr. Theodore Knatt, an orthopedic surgeon of her choice, and Dr. Rodriguez, who performed an IME. She sought both wage benefits and medical treatments related to her knee injury, as well as attorneys fees and penalties.
A trial was held at the OWC on November 13, 2013, at the beginning of which the parties stipulated that Ms. Greavis’s average weekly rate was $1,103.12 and her compensation rate was $592.00 per week. The OWC judge rendered judgment on January 8, 2014, in favor of Ms. Greavis, finding that she sustained injury to her left knee in an accident that occurred in the course and scope of her employment, and that the knee injury and subsequent surgeries were caused by and directly related to that accident. The OWC judge awarded her weekly benefits at the rate stipulated, together Rwith all medical benefits for surgery and treatment necessitated by that injury, together with interest and costs. The OWC judge, however, found that the defendant reasonably-controverted her claim and denied Ms. Greavis’s request for penalties and attorneys fees. The Iberville Parish School Board appeals that judgment.
ASSIGNMENT OF ERROR
In its sole assignment of error, the defendant asserts the OWC judge erred in finding that Ms. Greavis was injured in the course and scope of her employment and that there was a causal connection between the November 1, 2011 incident and Ms. Greavis’s knee injury.
*777 STANDARD OF REVIEW and BURDEN OF PROOF
In workers’ compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC’s findings of fact is the “manifest error-clearly wrong” standard. Dean v. Southmark Const. 2003-1051 (La.7/6/04), 879 So.2d 112, 117. The issue to be resolved by the reviewing court .is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. If the fact finder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Duet v. Metro Preferred Health, 2013-2042 (La.App. 1 Cir. 5/2/14), 145 So.3d 434, 436.
A workers’ compensation claimant has the burden of proving by a preponderance of the evidence the necessity of treatment and the causal connection between the treatment and the employment-related accident. La. R.S. 23:1203(A); see also Church Mutual Insurance Company v. Dardar, 2013-2351 (La.5/7/14), 145 So.3d 271, 281.
DISCUSSION AND ANALYSIS
In arguing that Ms. Greavis failed to meet her burden of proving that the Incident in which she was kicked on the side of her left knee by the out-of-control student caused a knee injury that caused pain and necessitated subsequent surgery, the defendant relies primarily on the fact that Ms. Greavis continued to work, without complaining of injury, and did not seek medical treatment for the knee until some three months after the | (¡incident occurred. Defendant also relies on Ms. Greavis’s candid admissions at trial that she previously suffered from a sciatic nerve condition in her back that caused leg pain and for which she took pain medication. Thus defendant infers that Ms. Greavis did not sustain a knee injury as a result of the incident rather, her pain was due to her preexisting conditions. Further, defendant notes some inconsistency in Ms. Greavis’s testimony concerning where and when she first sought treatment for the knee injury, and relies on the opinion of the physician who conducted an independent medical examination (IME) of Ms. Greavis, Dr. Ricardo Rodriguez, to the effect that she suffered from osteoarthritis of the left knee that did not result from the November 1, 2011 incident We note that the record reveals that although Dr. Rodriguez diagnosed Ms. Greavis with osteoarthritis of the knee, and did not relate that condition to the incident on November 1, 2011, he also noted that “certainly the injury (the kick to the knee) may have exacerbated this problem,” but that he would have expected her to have pain sooner than the six to eight weeks later when she sought treatment. Moreover, Ms. Greavis testified that her appointment with Dr. Rodriguez lasted no longer than five minutes, and that he did not physically examined her. Contrary to the opinion of Dr. Rodriguez, the record also reveals that Dr. Knatt stated that it is not unusual for a patient to have a delayed onset of symptoms with the type of traumatic injury sustained by Ms. Greavis when she was kicked in the knee area, particularly when the patient.suffered from preexisting sciatic pain that travels down the leg, as did Ms. Greavis.
As noted above, if the fact finders findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Duet, 145 So.3d at 436.
*778 At trial, Ms. Greavis testified that she had been in an automobile accident in 1989 or 1990 as a result of which she suffered a cervical injury and had two discs removed from her neck. She also noted that because of that injury and the pain resulting therefrom, she had been treated with steroid injections and took hydrocodone (every eight to twelve hours) as needed for the pain. She also candidly admitted that she had | suffered from back problems, for years prior to the incident in which she was kicked in the knee, and that she was treated for her back and neck condition by a pain management physician, Dr. Alpesh Patel, at Comprehensive Pain Management, LLC. She testified that while she did suffer from pain in her knee after the incident at school, she believed in hindsight that the pain medications she was taking for her sciatic condition somewhat masked the knee injury, and she did not realize she had suffered a new injury until the pain in her knee got progressively worse. She stated that she thought the initial pain was temporary and that she thought it would “just go away.” However, over time, it progressively got worse, and she went from simply having a limp in her walk to having to drag her leg to walk. She also indicated that she was hesitant to file a workers’ compensation claim because she knew that “when you are on Workers’ Comp, you are not going to be on the job” and she wanted to continue working. According to Ms. Greavis, she chose to file under her own personal health insurance for her medical treatment rather than file a workers’ compensation claim and not be allowed to work.
Ms. Greavis also testified that when she complained about the pain in her leg after the incident, which she stated she had not felt before, her physician related it to her preexisting sciatic nerve condition, which they explained to her could also generate pain down her leg. She testified that at the advice of a co-worker, to whom she complained about the pain in her leg and knee getting progressively worse, she made an appointment to see Dr. Knatt.
The record reveals that she first saw Dr. Knatt for the knee and leg pain on February 17, 2012. At that visit, she told him about the November 2011 incident when she sustained a hard kick to her left knee by an out-of-control student. The record also reveals that she went to the emergency room at Our Lady of the Lake Hospital (OLOL) because the pain had become so severe that the pain medications she was taking did not alleviate her symptoms. She also admitted during her testimony at trial that she was concerned at that time that she may have a blood clot in her leg, because her late sister had one which required amputation and from which her sister eventually died.
Is At Dr. Knatt’s request, Ms. Greavis underwent an MRI of her knee, and that test revealed that she had a torn ligament in the knee. Dr. Knatt recommended and performed a scope, on March 17, 2012, in attempts to clean out the knee and repair the ligament. Ms. Greavis testified that she continued to work, albeit in pain, until the day prior to having the scope done on her knee, when Dr. Knatt told her she could not continue working. She further testified that she did not get any relief from the scope and that Dr. Knatt then recommended that she needed a knee replacement, which she underwent in February 2013.
During the time she was out of work, Ms. Greavis was called into a meeting with members of the school board, following which she made the decision to retire. She testified, however, that she loved her job and would still De working, but the school board advised her that she could no longer be employed after having missed *779 more than ninety days of work, so she regretfully retired after thirty-eight years of employment in January 2013. She also stated that if her knee injury allowed, and the doctor released her, she would return to work. Ms. Greavis testified, “I’m 62 years old. Even though I have an injury, I still feel I have a lot of life in me, and I am capable of doing a lot of things. I am talented in more than one thing than teaching, so yes, I would be working.” However, at the time of trial, she was still being treated for her injury by Dr. Knatt and he had not released her to return to work.
Ms. Doris Knatt, the teaching assistant that was in the classroom with Ms. Greavis on the date of the incident at issue, also testified at trial. She stated that she witnessed the out-of-control student kick Ms. Greavis on the leg right below the knee. She testified that the student was wearing boots that day and that the kick was a “strong” one.
Also included in the record is the deposition testimony of Dr. Knatt, Ms. Greavis’s treating physician. According to Dr. Knatt, Ms. Greavis’s knee injury was consistent with trauma, such as a hard kick to the knee area, which can cause the “occult tear of the lateral meniscus” (that he diagnosed Ms. Greavis as having), and can also cause posttraumatic arthritis, rendering such a preexisting condition to become symptomatic or |amore painful. He also testified that a delay in the severity of pain and swelling occurring as a result of such trauma is not at all unusual. He was also of the opinion that Ms. Greavis’s condition was not the result of a degenerative process.
In ruling in favor of Ms. Greavis, the OWC judge specifically found that Ms. Greavis suffered “one strong kick to the leg by a medium-size[d] fifth-grade student.” The OWC judge further found that Ms. Greavis’s pain medication treatment for preexisting back and neck condition may have masked the injury sustained on November 1, 2011, such that her delay in seeking treatment was justified. The OWC judge agreed with the defendant that there were some inconsistencies in the testimony of Ms. Greavis as well as some of the medical records, and indicated that he took those into consideration, but nonetheless, made the specific finding that Ms. Greavis was credible. He based the finding of credibility on “her mannerisms, tone of voice, body language, facial expressions, and genuine sincerity.” Finally, the judge noted that Ms. Greavis’s orthopedic surgeon, Dr. Knatt, “clearly related the left knee injury to the [November 1, 2011] accident.”
CONCLUSION
Based on the foregoing, and guided by the cited jurisprudential principles, we cannot say that the OWC was clearly wrong in finding that Ms. Greavis bore her burden of proving that she sustained a left knee injury while in the course and scope of her employment on November 1, 2011, and that there was a causal connection between that injury and the resulting need for her knee surgeries. Accordingly, the judgment is affirmed. All costs of this appeal in the amount of $541.44 are assessed to the defendant, the Iberville Parish School Board.
AFFIRMED.