JOY COSSICH LOBRANO, Judge.
|, Claimant, Malord Gales, appeals the July 15, 2013 judgment of the Office of Workers’ Compensation (“OWC”) granting the exception of prematurity filed by defendant, Whole Food Company, Inc., and dismissing claimant’s lawsuit with prejudice.
On November 15, 2001, claimant was shot while in the course and scope of his employment with the defendant, and has remained in a permanent vegetative state since that time. His mother, Dolter Gales, *1053 is his caretaker and acts for him as his curatrix.
On April 26, 2013, claimant filed a disputed claim for compensation (Form LDOL-WC-1008) in which he requested an order requiring defendant “to pay for the former food authorized by claimant’s doctors as well as for penalties and attorney’s fees for arbitrarily stopping a prescribed food solely for reasons of money without any medical input.” The disputed claim for compensation included the following allegations:
Claimant’s doctors have ordered for many years that the paralyzed claimant be bowl fed Isosource 1.5 cal food that contains benefiber and claimant has tolerated this food well with normal bowel | ¿function. Defendant has been paying for this food for many years. Recently, however, defendant arbitrarily has refused to approve and pay for this food because in defendant’s view it is too expensive and, therefore, has only approved of different food in a different form which has caused significant bowel problems and which the claimant cannot tolerate. This new food is Isosource 1.5 cal that does not contain benefiber and comes in a bag form designed for pumping which does not work with the bowl feeding the claimant is used to.
The defendant filed a dilatory exception of prematurity arguing that the claimant has failed to follow the mandated administrative procedures necessary for a claim for medical treatment under La. R.S. 23:1203.1. Specifically, defendant argues that claimant was required to first submit a Form 1010 to defendant requesting additional medical treatment. Defendant also argued in the exception of prematurity that the claimant filed a claim for penalties and attorney’s fees for failure to provide medical treatment on the same day that the medical treatment was recommended by claimant’s physician.
Claimant opposed the exception of prematurity and attached the affidavit of claimant’s mother. Claimant argued that the medical treatment guidelines set forth in La. R.S. 23:1203.1 did not go into effect until July 2011 and do not apply to medical treatment and care provided prior to that time. According to claimant, the food source at issue was initially ordered by his physicians in 2002 when he was hospitalized for injuries sustained in 2001 while within the course and scope of his employment with defendant.
Following a hearing, the OWC judge granted defendant’s exception of | sprematurity and dismissed claimant’s claim with prejudice. Claimant now appeals and argues that the lower court erred in granting the defendant’s exception of prematurity. He argues that the medical treatment guidelines promulgated pursuant to La. R.S. 23:1203.1 do not apply retroactively to this 2001 accident. He also argues that the guidelines do not apply because this case did not involve a new request for treatment and the guidelines do not cover supplies of food sources as are involved in the instant case.
An appellate court reviews a judgment sustaining a dilatory exception of prematurity under the manifest error standard. Jefferson Door Company, Inc. v. Cragmar Construction, L.L.C., 11-1122, p. 3 (La.App. 4 Cir. 1/25/12), 81 So.3d 1001, 1004.
La. R.S. 23:1203.1 was enacted by the Louisiana Legislature in 2009, and the medical treatment guidelines became effective in 2011. La. R.S. 23:1203.1 states, in pertinent part:
B. The director [of the office of workers’ compensation administration] shall, through the office of workers’ compensation administration, promulgate rules in accordance with the Administrative Pro *1054 cedure Act, R.S. 49:950 et seq., to establish a medical treatment schedule.
(1) Such rules shall be promulgated no later than January 1, 2011.
(2) The medical treatment schedule shall meet the criteria established in this Section and shall be organized in an interdisciplinary manner by particular regions of the body and organ systems.
C. The schedule shall be developed by the conscientious, explicit, and judicious use of current best evidence in making decisions about the care of individual patients, integrating clinical expertise, which is the proficiency and judgment that clinicians acquire through clinical experience and clinical practice, with the best available external clinical evidence from systematic research.
D. The medical treatment schedule shall be based on guidelines which shall meet all of the following criteria:
|4(1) Rely on specified, comprehensive, and ongoing systematic medical literature review.
(2) Contain published criteria for rating studies and for determining the overall strength of the medical evidence, including the size of the sample, whether the authors and researchers had any financial interest in the product or sendee being studied, the design of the study and identification of any bias, and the statistical significance of the study.
(3) Are current and the most recent version produced, which shall mean that documented evidence can be produced or verified that the -guideline was developed, reviewed, or revised within the previous five years.
(4) Are interdisciplinary and address the frequency, duration, intensity, and appropriateness of treatment procedures and modalities for all disciplines commonly performing treatment of employment-related injuries and diseases.
(5)Are, by statute or rule, adopted by any other state regarding medical treatment for workers’ compensation injuries, diseases, or conditions.
E. The medical advisory council shall develop guidelines in accordance with Subsections C and D of this Section and may amend the schedule in accordance with Subsection C and Paragraph (D)(2) of this Section before submission to the director of the office of workers’ compensation administration for initial and subsequent formal adoption and promulgation in accordance with the Administrative Procedure Act, R.S. 49:950, et seq.
F. The director of the office of workers’ compensation administration shall appoint a medical advisory council, which shall be selected in accordance with the following:
(1) The professional association in Louisiana that represents each discipline enumerated in this Subsection shall provide the director of the office of workers’ compensation, on or before August 15, 2009, the names of three nominees, from which at least one representative shall be chosen to represent his respective discipline on the council.
(2) The director shall select at least one representative from each of the following disciplines or associations:
(a) Orthopedic surgeons.
(b) Neurosurgeons.
(c) Neurologists.
|R(d) Interventional pain management physicians.
(e) Family practice physicians.
(f) Physical and occupational therapists.
(g) Chiropractic Association of Louisiana.
(h) Psychologists and psychiatrists.
(3) The director may consider and appoint additional representatives in order *1055 to fulfill his duties as defined in this Section.
(4) The initial members of the medical advisory council shall serve until August 14, 2011, and all subsequent members shall serve two-year terms beginning on August fifteenth of each odd-numbered year.
(5) The director shall have the authority to contract with a medical director and with consultants to assist the director and the medical advisory council in the establishment and promulgation of the schedule.
G. The medical advisory council shall:
(1) Review current guidelines and accepted medical treatments which meet the criteria set forth in Subsections C, D, and E of this Section.
(2) Provide recommendations to the director for the designation of guidelines to be established and promulgated as the medical treatment schedule by the office.
(3) Provide any additional advice and counsel to the director as may be reasonable and necessary, or as may be requested, relative to the effective and efficient delivery of quality medical services to injured workers.
[[Image here]]
I.After the promulgation of the medical treatment schedule, throughout this Chapter, and notwithstanding any provision of law to the contrary, medical care, services, and treatment due, pursuant to R.S. 23:1203 et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule. Medical care, services, and treatment that varies from the promulgated medical treatment schedule shall also be due by the employer when it is demonstrated to the medical director of the office by a preponderance of the scientific medical evidence, that a variance from the medical treatment schedule is reasonably required to cure or ¡¿relieve the injured worker from the effects of the injury or occupational disease given the circumstances.
J. (1) After a medical provider has submitted to the payor the request for authorization and the information required by the Louisiana Administrative Code, Title 40, Chapter 27, the payor shall notify the medical provider of their action on the request within five business days of receipt of the request. If any dispute arises after January 1, 2011, as to whether the recommended care, services, or treatment is in accordance with the medical treatment schedule, or whether a variance from the medical treatment schedule is reasonably required as contemplated in Subsection I of this Section, any aggrieved party shall file, within fifteen calendar days, an appeal with the office of workers’ compensation administration medical director or associate medical director on a form promulgated by the director. The medical director or associate medical director shall render a decision as soon as is practicable, but in no event, not more than thirty calendar days from the date of filing.
[[Image here]]
K. After the issuance of the decision by the medical director or associate medical director of the office, any party who disagrees with the decision, may then appeal by filing a “Disputed Claim for Compensation”, which is LWC Form 1008. The decision may be overturned when it is shown, by clear and convincing evidence, the decision of the medical director or associate medical director was not in accordance with the provisions of this Section.
[[Image here]]
*1056 M. (1) With regard to all treatment not covered by the medical treatment schedule promulgated in accordance with this Section, all medical care, services, and treatment shall be in accordance with Subsection D of this Section.
(2) Notwithstanding any other provision of this Chapter, all treatment not specified in the medical treatment schedule and not found in Subsection D of this Section shall be due by the employer when it is demonstrated to the medical director, in accordance with the principles of Subsection C of this Section, that a preponderance of the scientific medical evidence supports approval of the treatment that is not covered.
At the time the original briefs in this case were filed, there was a conflict within the appellate court circuits on the issue of whether La. R.S. 23:1203.1 had ^retroactive application. This Court, in Church Mutual Insurance Company v. Dardar, 12-0659, 13-0037 (La.App. 4 Cir. 6/26/13), 119 So.3d 967, held that La. R.S. 23:1203.1 is substantive in nature and is not to be applied retroactively, whereas the Third Circuit, in Cook v. Family Care Services, Inc., 13-108 (La.App. 3 Cir. 8/28/13), 121 So.3d 1274, held that La. R.S. 23:1203.1 is procedural in nature and does have retroactive application. On January 17, 2014, the Louisiana Supreme Court granted supervisory review on both of these cases and consolidated them for argument. On March 27, 2015, this Court granted defendant’s unopposed motion to continue oral argument in this Court, which was previously set for April 1, 2014, and stayed this matter pending the decision of the Louisiana Supreme Court in the consolidated cases above.
On May 7, 2014, the Supreme Court rendered separate opinions, affirming the Third Circuit decision in Cook v. Family Care Services, Inc., 13-2326, 13-2351 (La.5/7/14), 144 So.3d 969, and remanding for further proceedings, and reversing this Court’s decision in Church Mutual Insurance Company v. Dardar, 13-2351, 13-0037 (La.5/7/14), 145 So.3d 271, and remanding for further proceedings. The Supreme Court ruled in both cases that La. R.S. 23:1203.1 is procedural in nature, does not affect substantive rights, and applies to all requests for medical treatments and/or all disputes emanating from requests for medical treatment after the effective date of the medical treatment schedule regardless of the date of the work-related accident and injury. Cook, 13-2326, p. 1, 144 So.3d at 970; Dardar, 13-2351, p. 2, 145 So.3d at 274.
|8Both parties complied with this Court’s February 9, 2015 order to submit supplemental briefs in light of the Louisiana Supreme Court’s decisions in Cook, supra, and Dardar, supra. Based on the holdings in those two cases, we find no merit in claimant’s argument that La. R.S. 23:1203.1 cannot be applied retroactively to injuries for work-related accidents that occurred prior to the effective date of that statute.
We now address claimant’s argument that these guidelines do not apply to this case because there was no new request for treatment and the guidelines do not cover supplies of food sources as are involved in the instant case. Claimant’s disputed claim for compensation, which was filed on April 26, 2013, alleges that the defendant has been paying for and providing claimant with a particular nutrient, Isosource 1.5 calorie with Benefiber, for many years prior to the filing of this claim. The disputed claim also includes an allegation that the defendant “arbitrarily has refused to approve and pay for this food [Isosource 1.5 calorie with Benefiber],” and “has only approved of different food in a different form [Isosource 1.5 calorie without Benefiber].” The disputed claim does *1057 not include the specific dates that any of these actions occurred other than to state that the defendant refused to approve and pay for the Isosource 1.5 calorie with Be-nefiber “recently.” The claim stated that claimant has experienced significant problems with the substituted product.
At the hearing on defendant’s exception of prematurity, the only evidence submitted was the affidavit of the claimant’s mother, Dolter Gales. As noted in Jefferson Door Co., Inc. v. Cragmar Construction, L.L.C., 11-1122, p. 3 (La.App. 4 Cir. 1/25/12), 81 So.3d 1001, 1004, on an exception of prematurity “evidence may be introduced to support or controvert the exception, when the grounds do not appear from the petition.” La. C.C.P. art. 930. In Ms. Gales’ affidavit, dated June 19, 2013, she stated that PMSI, a supplier with whom the defendant’s workers’ compensation insurer contracts for certain medical supplies, has supplied her son with a nutrient called Isosource 1.5 calorie with Benefiber since 2002, but that the delivery of this product to claimant was stopped in March 2013 and a substitute product was delivered instead. Ms. Gales stated that she asked her son’s physician to write a prescription for Isosource 1.5 calorie with Benefiber in April 2013. She also stated that when delivery of Isosource 1.5 calorie with Benefiber stopped in March 2013, she obtained this same product through an online source. To do so, she had to use her own funds in an amount in excess of $200.00.
Although Ms. Gales’ affidavit does not include specific dates, it establishes that the food product that PMSI had been supplying to her son for many years was stopped in March 2013. The prescription written by claimant’s physician in April 2013 is not in the appeal record, but defendant’s counsel stated at the hearing on the exception and in his appeal briefs that the date of the prescription was April 26, 2013.
In Dardar, the Supreme Court summarized the legislature’s purpose in enacting La. R.S. 23:1203.1 as follows:
Enacted by the legislature in 2009, La. R.S. 23:1203.1 is the product of a combined endeavor by employers, insurers, labor, and medical |inproviders to establish meaningful guidelines for the treatment of injured workers. 1 DENIS PAUL JUGE, LOUISIANA WORKERS’ COMPENSATION, § 13:6 (2d ed.2013). Dissatisfied with a process for obtaining needed medical treatment that was cumbersome, uncertain and often fraught with expense, employers and their insurers perceived a need for guidelines that would assure them that the treatment recommended by a medical provider was generally recognized by the medical community as proper and necessary. Id. In a similar vein, labor and their medical providers were concerned about the unreasonable delays regularly encountered in obtaining approval for treatment when disputes arose as to the necessity for the treatment and with having a procedure for obtaining approval for treatment that might vary from established guidelines. Id. Thus, La. R.S. 23:1203.1 was enacted with the express intent “that, with the establishment and enforcement of the medical treatment schedule, medical and surgical treatment, hospital care, and other health care provider services shall be delivered in an efficient and timely manner to injured employees.” La. R.S. 23:1203.1(L).
Dardar, 13-2351, 13-0037, p. 5, 145 So.3d at 275-276 (footnotes omitted.)
In Dardar, the claimant alleged that she had requested certain medical treatment recommended by her physician for her work-related injury, including office visits, medication refills and injections, and that her employer and its insurer had arbitrari *1058 ly and capriciously refused to approve the requested treatment. Because the claimant’s request for medical treatment was submitted after the effective date of La. R.S. 23:1203.1 and the medical treatment schedule, the Supreme Court in Dardar reversed this Court’s decision that the claim was not premature, and reinstated the OWC’s ruling maintaining the exception of prematurity filed by the claimant’s employer and its insurer. Dardar, 13-2351, 13-0037, pp. 24-25, 145 So.3d at 287-288.
We find that the instant case is distinguishable from Dardar. Here, there is no evidence that claimant had made a request for medical treatment when, in March 2013, the defendant, through PMSI, stopped sending the long-supplied nutrient to claimant and started sending a substitute nutrient instead. The Inphysician’s script for the original product, which the defendant alleged was a new request for medical treatment requiring application of the procedures of La. R.S. 23:1203.1, was not written until April 26, 2013, several weeks after PMSI stopped sending the nutrient provided to claimant for the preceding eleven years.
This case is also distinguishable from Dardar in that there is no dispute in this case as to the medical necessity of the nutrient that was provided to claimant from 2002 until March 2013. As defense counsel concedes in his appeal brief, “[t]here is no dispute that the claimant is entitled to the nutrients, as have been continuously supplied to him for over 10 years and continue to be supplied to him.” The defendant’s arguments regarding the change in the type of nutrient sent to claimant are not based on a dispute as to medical necessity but rather on the alleged unavailability of the previously-supplied product.
The essence of the disputed claim in this matter is that in March 2013, the defendant, through PMSI, stopped sending claimant a nutrient that had been supplied to him since 2002 and instead began sending a different and allegedly unsuitable product, which required claimant’s mother to expend her own funds to obtain the needed product through an online source. The cessation of the supply of Isosouree 1.5 calorie with Benefiber to claimant occurred before the script for that product was written by claimant’s physician on April 26, 2013. When read together, the disputed claim for compensation and claimant’s mother’s affidavit show that this claim is not a new request for medical treatment but, rather, is a claim for reimbursement of sums paid for allegedly necessary medical supplies and for attorney’s fees and penalties for the allegedly arbitrary and capricious | ^discontinuance in March 2013 of the nutrient that had been provided to claimant by the defendant through its insurer’s medical supplier since 2002.[1]
Accordingly, we find that the OWC judge erred in granting defendant’s exception of prematurity[2] based on our eonclu *1059 sion that this disputed claim for compensation falls outside of the medical treatment guidelines and procedures provided by La. R.S. 23:1203.1. Because of our conclusion, we need not address claimant’s argument that supplies of food sources such as the one involved in the instant case are not covered by the guidelines.
For the reasons stated above, we reverse the OWC judgment granting the defendant’s exception of prematurity, and remand this matter to the OWC for further proceedings consistent with this opinion.
REVERSED AND REMANDED

. La. R.S. 23:1203(A) provides, in part, that an employer "shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any non-medical treatment recognized by the laws of this state as legal.” La. R.S. 23:1201 authorizes attorney's fees and penalties to be assessed against an employer in the event that the employer fails to provide payment for medical benefits payable under the Workers' Compensation Act.

. In granting the exception of prematurity, the OWC judge also ruled that the disputed claim for compensation was being dismissed with prejudice. We note that the dismissal of a lawsuit on an exception of prematurity is necessarily without prejudice. Jefferson Door Company, Inc., 11-1122, p. 8, 81 So.3d at 1006.