HOLDRIDGE, J.
*703 Appellant, the Lafourche Parish School Board (School Board) appeals a judgment denying its motion to modify a 1997 judgment of the Office of Workers' Compensation (OWC) rendered in favor of Elaine Rodrigue. Mrs. Rodrigue also appeals the judgment, asking that certain language be stricken therefrom. We maintain the appeal, amend a portion of the judgment, and as amended, affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Most of the facts forming the basis for this appeal can be gleaned from earlier opinions of this court and the OWC in Rodrigue v. Lafourche Parish School Board, 00-0154 (La. App. 1 Cir. 6/23/00) (unpublished), writ denied, 2000-2205 (La. 10/27/00), 772 So.2d 649 (sometimes referred to as Rodrigue I ) and Rodrigue v. Lafourche Parish School Board, 2004-1136 (La. App. 1 Cir 5/6/05), 909 So.2d 627, writ denied, 2005-2366 (La. 3/17/06), 925 So.2d 546 (sometimes referred to as Rodrigue II ). Mrs. Rodrigue was hired as a paralegal for the School Board in 1983. In 1992, she sustained orthopedic injuries during the course and scope of her employment when she tripped over a rug at work, necessitating surgery. After her surgery, in 1993, Mrs. Rodrigue returned to work and was transferred to a metal building, where she was exposed to noxious odors and fumes. She left her employment in 1994 due to worsening orthopedic problems associated with the trip and fall accident; however, her exposure symptoms progressively worsened. Mrs. Rodrigue was treated by Dr. William Rea, an environmental medicine specialist with the Environmental Center in Dallas, Texas. According to Dr. Rea, Mrs. Rodrigue was suffering from a "damaged detoxification system" due to, among other things, chemical exposures and chemical sensitivity. Dr. Rea opined that the surgery Mrs. Rodrigue underwent as a result of the trip and fall accident weakened her detoxification system, making her vulnerable to overexposure to chemicals in the work environment. Rodrigue II, 909 So.2d at 629.
Mrs. Rodrigue filed a disputed claim for compensation against the School Board and its insurer. At issue before the Workers' Compensation Judge (WCJ) was whether Mrs. Rodrigue's chemical sensitivity condition was casually related to her employment, and if so, what medical and related expenses are recoverable in connection with the treatment of that condition. On March 20, 1997, the WCJ rendered judgment in favor of Mrs. Rodrigue and against the School Board, entering the following decrees: (1) Mrs. Rodrigue's occupational disease and related disability resulted from overexposure in the work place and was causally related to her employment with the School Board; (2) medical and related expenses resulting from the overexposure, as prescribed by Dr. Rea in the reasons for judgment, were medically reasonable and necessary, and *704 therefore, recoverable; (3) the School Board shall be responsible for past and necessary medical expenses incurred by Mrs. Rodrigue and those expenses reasonable and necessary to modify her home and obtain the appliances and devices recommended by Dr. Rea in the reasons for judgment; and (4) the School Board "shall be responsible for the continuing reasonable and necessary medical care and expenses as recommended by Dr. Rea." Rodrigue v. Lafourche Parish School Board, 94-08832 (La. Office of Workers' Compensation District 09 3/20/97) (hereinafter referred to as "the 1997 judgment"). The written reasons for judgment, incorporated into the 1997 judgment, set forth 20 items contained in Dr. Rea's prescription orders, that were determined by Dr. Rea to be reasonable and necessary as part of Mrs. Rodrigue's continuing treatment, including:
1) Home carpet replacement;
2) Organic food:
3) Home sauna;
4) Air purification system for home and car, and a portable one;
5) Organic cotton pillow;
6) Water purifier for household use;
7) Glass cookware and dishes;
8) Spring with mattress pad;
9) Carbon filters for air and heating units;
10) Bottled glass water for home and travel use;
11) Carbon filter masks;
12) Syringes and towelettes for receiving antigen treatments;
13) Chemicals for use in sauna, referred to as sauna supplements;
14) Natural vitamins;
15) Organic cotton clothing;
16) Replace gas stove and oven with electric stove and oven;
17) Replace carpet with wood and tile board;
18) Environmentally safe window coverings, curtains and aluminum blinds;
19) Antigens and other nutritional prescriptions for injection therapy;
20) Barrier cloth in home.
This judgment was not appealed and became a final judgment between the parties. Rodrigue II, 909 So.2d at 630.
On September 13, 1999, Mrs. Rodrigue filed a motion to enforce the judgment, asserting that the School Board failed to pay reasonable and necessary medical expenses owed under the judgment that were incurred as a result of the recommendations and treatment of Dr. Rea. Rodrigue I. The parties stipulated that all expenses submitted by Mrs. Rodrigue to the School Board were incurred as a result of recommendations and treatment by Dr. Rea. The School Board offered no evidence, but insisted that it should not be required to pay for everyday expenses such as organic food and bottled water. The WCJ found that the School Board arbitrary and capriciously disregarded the 1997 judgment and its statutory obligation to pay the judgment timely, including costs incurred for organic foods and bottled water.[1] The School Board appealed the judgment and assigned error to the WCJ's finding that bottled water and organic foods were reimbursable expenses. This court refused to address that issue, stating as follows:
In this case, the March 20, 1997 judgment ordered [the School Board] to *705 pay 'the medical and related expenses resulting from the overexposure, as prescribed by Dr. Rea in the Reasons for Judgment....' The written reasons for judgment specifically documented Dr. Rea's prescription orders, which provided, inter alia, that [Mrs. Rodrigue] consume only organic foods and bottled water. Moreover, the evidence in the record shows that defendant was presented with prescriptions written by Dr. Rea instructing claimant to use organic food and bottled water. Thus, [the School Board] clearly was obligated to pay these expenses. If [the School Board] contended the workers' compensation judge erred in awarding these expenses, it should have appealed the March 20, 1997 judgment, which it failed to do. [The School Board] cannot now raise this assignment of error in its appeal of a judgment on an action for penalties.
Rodrigue I, at pp. 4-5.
In 2003, Mrs. Rodrigue filed another motion to enforce the judgment arguing, among other things, that the School Board failed to honor its obligation under the 1997 judgment to pay the "continuing reasonable and necessary medical care and expenses as recommended by Dr. Rea." October 20, 2003, the WCJ rendered judgment in favor of Mrs. Rodrigue, granting her motion to enforce and awarding her penalties and attorney's fees for the School Board's untimely payment of expenses. In denying the School Board's motion for a new trial, the WCJ ruled that the 1997 judgment was controlling in determining the School Board's obligations concerning Mrs. Rodrigue's medical expenses. Rodrigue II, 909 So.2d at 632-633. This court quoted the WCJ's written reasons for judgment as follows:
This Court made a specific finding in the original hearing that the medical and related expenses resulting from the overexposure as prescribed by Dr. Rea...are medically reasonable and necessary. Thus, the obligation of the employer herein post-judgment regarding medical expenses is not the general open-ended question of what any particular medical person would think is reasonable and necessary, but is tied to the recommendations of Dr. Rea, claimant's treating physician. Essentially, this Court determined that whatever Dr. Rea recommended for treatment of overexposure is reasonable and necessary and is an obligation of the employer.
Rodrigue II, 909 So.2d at 633.
The School Board appealed the award of penalties and attorney fees, arguing among other things, that Mrs. Rodrigue failed to present evidence to establish that the medical expenses were incurred and were reasonable and medically necessary given her condition at that point in time. In Rodrigue II, the School Board contended that Mrs. Rodrigue bore the burden of proving that the treatment recommended by Dr. Rea was reasonable and medically necessary, and accordingly, her motion to enforce the judgment should have been denied for lack of supporting evidence. In Rodrigue II, this court disagreed, finding no merit in the School Board's argument. In so doing, this court observed:
Prior to the hearing on the March 17, 2003 motion to enforce, the parties entered into various stipulations, including one regarding the medical expenses in question. The parties agreed that if Mrs. Rodrigue were to testify, her testimony would be that the medical expenses were incurred in connection with recommendations and treatment by Dr. William Rea. As previously noted, the award from the final judgment rendered on March 20, 1997 was for 'the continuing *706 reasonable and necessary medical care and expenses as recommended by Dr. Rea.' The wording of the March 20, 1997 judgment controls the obligation of the School Board in the instant case. Essentially, the WCJ determined that whatever Dr. Rea recommended for treatment of Mrs. Rodrigue is reasonable and necessary. Thus, based on the stipulation of the parties, the medical expenses in question are clearly brought within the purview of the March 20, 1997 judgment without the necessity of Mrs. Rodrigue submitting additional evidence. It is clear that no legitimate question existed as to which bills were due under the March 20, 1997 judgment.[2]
Rodrigue II, 909 So.2d at 633.
In 2008 and 2009, Mrs. Rodrigue filed three separate motions to enforce the judgment. Specifically, Mrs. Rodrigue submitted bills and expenses to the School Board based on Rea's recommendations, for items such as specialized food, water, vitamins, supplements, and hormones, chemical free living space, chemical irritant avoidance, and other treatments prescribed by Dr. Rea. In a judgment signed in 2011 and resigned in May 2015, the WCJ granted all of Mrs. Rodrigue's motions to enforce payment of bills related to all of these expenses submitted to the School Board, holding that they were due and owing pursuant to the terms of the 1997 judgment. Rodrigue v. Lafourche Parish School Board, 09-01575 (La. Office of Workers' Compensation District 09 5/12/15). In its reasons for judgment, the WCJ observed that the School Board had retained another doctor to evaluate Mrs. Rodrigue, who disagreed with most of Dr. Rea's treatment recommendations for Mrs. Rodrigue. The WCJ assigned more weight to the opinion of Dr. Rea and found that the bills Mrs. Rodrigue submitted for the care recommended by Dr. Rea were necessary and compensable. Furthermore, the WCJ noted, the wording of 1997 judgment controlled the obligation of the School Board, and in that judgment, the WCJ essentially determined that whatever Dr. Rea recommended for treatment of Mrs. Rodrigue was reasonable and necessary. The WCJ found that based on the evidence the medical expenses in question were clearly within the purview of the 1997 judgment. It further observed that while the School Board could seek to modify 1997 judgment, it failed to plead or present sufficient evidence to effect a modification of the judgment.
On July 6, 2016, the School Board filed this disputed claim for compensation in the Office of Workers' Compensation (OWC). Therein, the School Board sought to have the March 20, 1997 judgment of the WCJ modified in the following respects: (1) the language of the judgment pertaining to continuing reasonable medical care and expenses as supported by the testimony of Dr. Rea and plaintiff at the trial of this matter be modified to comport with La. R.S. 23:1310.8 and the Legislature's amendment of La. R.S. 23:1203.1 as applied by the Louisiana Supreme Court; and (2) it be ordered that all further requests by any of Mrs. Rodrigue's healthcare providers for medical treatment, prescriptions, vitamins, special food, supplies, etc. shall be submitted to the carrier for *707 pre-authorization and utilization review pursuant to the procedures set out in La. R.S. 23:1203.1 ; and (3) it be ordered that the School Board shall not be responsible for reimbursement for any further treatment or expenses Mrs. Rodrigue or her healthcare provider that have not been submitted to the carrier for pre-authorization and utilization review in accordance with La. RS. 23:1203.1.
In support of its motion, the School Board argued that the WCJ had authority to modify a prior judgment under La. R.S. 23:1310.8, which provides that the power and jurisdiction of a WCJ over each case shall be continuing and that the WCJ may, upon application by a party and after a contradictory hearing, make modifications or changes with respect to former findings or orders relating thereto. The School Board argued that there has been a change in the law requiring the WCJ to modify the judgment. Specifically, the School Board argued that La. R.S. 23:1203.1, enacted by the legislature in 2009 to provide for the establishment of medical treatment guidelines in workers' compensation, which were promulgated and became effective June 2011 (Medical Treatment Guidelines), applied to continuing treatment in cases preexisting the change in the law. Accordingly, the School Board urged that the 1997 judgment be modified to state that any orders by Mrs. Rodrigue's health care providers for continuing medical care, services, treatments, or supplies must be submitted to the carrier for pre-authorization in accordance with the utilization review procedures set forth in the Medical Treatment Guidelines.
In opposition to the motion to modify, Mrs. Rodrigue argued that the Medical Treatment Guidelines established by the OWC pursuant to La. R.S. 23:1203.1 do not apply to her continuing medical care, services and treatments because her rights were based on the 1997 judgment, which specifically outlined her rights and the obligations of the School Board. She urged that the School Board's motion to have all future medical expenses processed through the Medical Treatment Guidelines and utilization review procedures set forth therein was premature because there had been no medical expenses submitted to the School Board since the filing of the motion to modify the judgment. Mrs. Rodrigue also argued that the doctrine of res judicata barred reconsideration of the findings of the WCJ as to the reasonableness and necessity of her treatment as recommended by Dr. Rea and thus barred the School Board's request to modify the obligations of the School Board contrary to the terms of the 1997 judgment. According to Mrs. Rodrigue, the motion was yet another effort by the School Board to be relieved of its judicially imposed obligations towards her.
The School Board countered that it was not seeking to deny Mrs. Rodrigue treatment and is not contesting the treatment she is receiving; rather, it was merely seeking to obtain information regarding the nature of her condition and continuing treatment by having Mrs. Rodrigue follow the proper pre-certification procedures. The School Board acknowledged that Mrs. Rodrigue continues to treat regularly with Dr. Rea and periodically submits receipts for reimbursement for treatment exceeding $750.00 that had not been pre-authorized by the carrier. The School Board also noted that there were no outstanding requests for reimbursement for treatment and the carrier had paid all of Mrs. Rodrigue's medical expenses to date.[3]
*708 Following a hearing, the WCJ denied all of the School Board's requests to modify the judgment. In a document entitled "Final Judgment" rendered on October 31, 2016, the WCJ revealed that two issues presented for trial were Mrs. Rodrigue's exception of prematurity and the School Board's motion to modify the final judgment. In Section I of the judgment, the WCJ denied all of the School Board's motions to modify the judgment. In Section II of the judgment, the WCJ "clarified" the 1997 judgment to specifically enumerate the 20 items that had been adjudicated in the 1997 Final Judgment with Reasons as "medically reasonable and necessary." As to these 20 items, identified supra , the judgment decreed: (1) Mrs. Rodrigue or the healthcare provider must submit the medical bills and expenses to the School Board so that it can adjust the bills pursuant to the Louisiana Reimbursement Fee Schedule (Reimbursement Schedule) and make payments directly to the healthcare provider. If not for a healthcare provider, Mrs. Rodrigue may pay directly and submit the bills to the defendant for reimbursement. However, those items are not subject to utilization and review absent a change in condition; (2) if the School Board fails to approve and/or pay the items identified in the judgment and if Mrs. Rodrigue has to obtain the items/services, the School Board has forfeited its right to get the reduced rate under the Reimbursement Schedule; and (3) should Mrs. Rodrigue seek items not already adjudicated in the 1997 Final judgment, it would be subject to the Medical Treatment Guidelines.
In written reasons for judgment, the WCJ pointed out that Mrs. Rodrigue's healthcare provider never submitted any bills through the Medical Treatment Guideline procedures and had not sought approval prior to purchasing other non-prescription items listed in the final judgment. Instead, Mrs. Rodrigue paid the vendor directly and then sought an annual reimbursement from the School Board. The WCJ found this method to be inappropriate because it did not permit the School Board to take reductions pursuant the Reimbursement Schedule. The WCJ noted that such is a distinct employer/insurer right that is separate from the obligation to pay for adjudicated prescriptions and non-prescription items. Additionally, the WCJ stated that the 20 items enumerated in the 1997 judgment had been adjudicated to be reasonable and medically necessary and re-litigation of these items or review through utilization and review was not appropriate. Rather, the School Board's remedy was to show a change in Mrs. Rodrigue's condition to the extent that any of these items are no longer required, and the School Board had not alleged nor had it proven any change in Mrs. Rodrigue's condition. The WCJ made it clear that its judgment was a denial of the request by the School Board to review each item adjudicated in the 1997 judgment again for medical necessity and reasonableness; however, any requests for items not adjudicated in the 1997 final judgment would be subject to the Medical Treatment Guidelines.
On March 8, 2017, this court issued a rule to show cause order ex proprio motu, ordering the parties to show cause why the appeal should or should not be dismissed. This court found the following apparent defects in the judgment appealed from:
*709 It appears that the October 31, 2016 ruling entitled "Final Judgment" at issue in this matter is nonappealable.... Although the ruling indicates that the employee/claimant's exception of prematurity was at issue at the trial made the subject of the ruling, the exception of prematurity is not disposed of in the ruling. Additionally, while the ruling appears to deny portions of the Defendant Lafourche Parish School Board's "Motion to Modify 1997 Final Judgment in OWC # 94-08832" and to "clarify" portions of that "1997 Final Judgment," a new judgment ordering those clarifications does not appear to have ever been issued.
On March 27, 2017, the WCJ signed an "Amended Modified and Clarified Judgment" to address the defects. In Section I, the WCJ denied Mrs. Rodrigue's exception of prematurity. In Section II, the WCJ denied all of the School Board's motions to modify the 1997 judgment and attached the 1997 judgment with written reasons as "Addendum A" and referred to as if copied in the judgment. In Section III, the judgment provides that "the aforesaid 1997 Final Judgment is further clarified and amended, to wit:" and lists out the 20 items that have been adjudicated, in the 1997 final judgment with reasons, as medically reasonable and necessary. The amended and clarified judgment retains all of the remaining language found in the October 31, 2016 judgment regarding the Reimbursement Schedule and the applicability of the Medical Treatment Guidelines to items not adjudicated in the 1997 judgment. Lastly, it adds a provision decreeing that "[a]ny other requests for modifications not specifically granted or not granted by way of clarification in this Amended Modified and Clarified Judgment are denied."
On July 24, 2017, another panel of this court referred the rule to show cause to the panel to which the appeal was assigned. Having examined both the original judgment and the March 27, 2017 judgment, we find that the March 27, 2017 judgment cured any defects observed by this court in the October 31, 2016 judgment of the WCJ. Accordingly, we maintain the appeal.
In this appeal, the School Board raises three assignments of error, in which it argues that: (1) the WCJ erroneously denied its motion to modify the 1997 judgment awarding Ms. Rodrigue continuing reasonable and necessary medical care and expenses as recommended by her treating physician, when La. R.S. 23:1203.1 clearly dictates that medical care, services, and treatment due by an employer to an employee shall mean care, services and treatment in accordance with the Medical Treatment Guidelines; (2) the ruling of the WCJ conflicts with the application of La. R.S. 23:1203.1's requirement that all requests for authorization of care beyond the statutory non-emergency monetary limit of $750.00 be presented to the employer by the health-care provider for pre-authorization and utilization review under the Medical Treatment Guidelines; and (3) the WCJ erred in ruling that the employee can circumvent the Reimbursement Schedule by paying for her bills and expenses directly and then later requesting reimbursement from her employer.
Mrs. Rodrigue also appealed, attacking those portions of the judgment requiring that she submit bills from healthcare providers directly to the School Board so that they may be adjusted according to Reimbursement Schedule as well as language decreeing that should she seek items not adjudicated in the 1997 judgment, such would be subject to the Medical Treatment Guidelines. Mrs. Rodrigue insists that *710 these provisions of the judgment constitute substantive changes to the 1997 judgment, which are prohibited by article 1951 of the Louisiana Code of Civil Procedure.
DISCUSSION
We first address the School Board's contention that the WCJ erred in ruling that the treatment prescribed by Dr. Rea is not subject to the Medical Treatment Guidelines or the utilization and review process as set forth in La. R.S. 23:1203.1. The School Board argues that the language of the 1997 judgment awarding Mrs. Rodrigue continuing reasonable and medical care and expenses as supported by the testimony of Dr. Rea and plaintiff in this matter conflicts with the application of La. R.S. 23:1203.1 and the Louisiana Supreme Court's holding in Church Mutual Insurance Company v. Dardar, 2013-2351 (La. 5/7/14), 145 So.3d 271, 287-88, which held that La. R.S. 23:1203.1 is to be applied prospectively to all requests for medical treatment made after the effective date of the statute, regardless of the date of the accident. Therefore, the School Board argues, any further expenses for Mrs. Rodrigue's medical treatments, prescriptions, or supplies by any healthcare provider should be submitted to the carrier for pre-authorization review in accordance with the utilization procedure set forth in La. R.S. 23:1203.1 and the Louisiana Administrative Code, and the 1997 judgment should be modified accordingly to so reflect.
In an effort to control the cost of medical care but also to assure that workers receive the necessary medical treatment to which they are entitled, the Legislature enacted La. R.S. 23:1203.1 to establish guidelines for medical treatment, a schedule of reimbursement for such treatment, and a procedure to resolve disputes over medical treatment. Church Mutual Insurance Company, 145 So.3d at 275-276. The Medical Treatment Guidelines were promulgated and became effective June 2011. See Church Mutual Insurance Company, 145 So.3d at 287 ; LR 37:1631 (June 2011); LAC 40:1.2001 et seq.
At issue in Church was whether the Medical Treatment Guidelines could be applied to cases where the request for medical treatment and/or the dispute arising out of a request for medical treatment originated after the effective date of the schedule, but where the compensable incident arose prior to that date. The Court held that in such a situation, the application of La. R.S. 23:1203.1 did not constitute an impermissible retroactive application. The Court ruled that La. R.S. 23:1203.1 is a procedural vehicle that concerns the procedure for enforcing a substantive right and as such did not modify or suppress rights to necessary medical treatment already acquired by the compensation statutes. Church Mutual Insurance Company, 145 So.3d at 287-88. Rather, the Court observed, the statute applied prospectively to all requests for medical treatment and/or disputes arising out of requests for medical treatment arising after the effective date of La. R.S. 23:1203.1 and the Medical Treatment Guidelines, regardless of the date of the accident. Id., 145 So.3d at 287. The Supreme Court held this was so because procedural statutes such as La. R.S. 23:1203.1 become operative only when and if the remedy they serve to facility is invoked-if that remedy is invoked after the statute's enactment and the promulgation of the Medical Treatment Guidelines, the statute operates in the future, regardless of the time of the events giving rise to the case of action. Id. In Church, the court held that because the claimant's requests for Medical Treatment Guidelines were submitted after the effective date of La. R.S. 23:1203.1 and the promulgation of the Medical Treatment Guidelines, those *711 requests were subject to La. R.S. 23:1203.1 and the Medical Treatment Guidelines. Id., 145 So.3d at 287-88.
Mrs. Rodrigue counters that the School Board's obligation to her is not based on the workers' compensation statutes, but arises from the 1997 final judgment rendered by the WCJ after a trial on the merits, an obligation which has been confirmed on at least two occasions by this court and by two different WCJs. She posits that the 1997 judgment resolved all requests or disputes related to reasonable and necessary medical expenses to which she is entitled, and argues that reconsideration of the criteria for determining what constitutes reasonable and necessary medical expenses is barred by the law of the case doctrine and the principles of res judicata , absent a proof of change in her condition.
We agree. We find that the WCJ properly refused to modify the judgment to apply the Medical Treatment Guidelines to the 20 items identified in the 1997 judgment as having been prescribed by Dr. Rea and judicially determined to be medically reasonable and necessary. The School Board's obligation to pay for the items adjudicated in the 1997 judgment arises not from statute but from the judgment itself. That judgment, decreeing that the 20 items prescribed by Dr. Rea are medically reasonable, and therefore, recoverable by Mrs. Rodrigue, was not appealed and has acquired the authority of a thing adjudged. La. R.S. 13:4231 ; Salvador v. Main Street Family Pharmacy, L.L.C., 2017-1757 (La. App. 1 Cir. 6/4/18), 251 So.3d 1107, 1113, 2018 WL 2676595, *4. Application of the Medical Treatment Guidelines to modify Mrs. Rodrigue's right to recover items adjudicated in the 1997 judgment due solely to a change in the law, rather than a change in Mrs. Rodrigue's condition, would constitute an impermissible retroactive application of La. R.S. 23:1203.1. Having acquired the authority of a thing adjudged, the WCJ was without jurisdiction in the procedural posture of this case to modify, revise, or reverse the 1997 judgment with respect to the 20 items determined therein to be recoverable by Mrs. Rodrigue. See Tolis v. Board of Supervisors of Louisiana State University, 95-1529 (La. 10/16/95), 660 So.2d 1206 (per curiam); Succession of Poole, 2015-1317 (La. App. 1 Cir. 10/28/16), 213 So.3d 18, 23.
Moreover, Mrs. Rodrigue has not made a "new claim" for treatment falling outside the scope of the 1997 judgment. See Gales v. Whole Food Company, Inc., 2013-1492 (La. App. 4 Cir. 4/22/15), 165 So.3d 1052, 1058-59 (holding that the Medical Treatment Guidelines did not apply to a long-supplied nutrient to the employee by the employer through its insurer medical supplier since 2002, where the employee did not make a "new request" for medical treatment, but merely sought reimbursement for sums expended after the treatment had been discontinued).[4]
*712 We find that the School Board's remedy to be relieved of its obligation to provide the care and expenses adjudicated to be medically reasonable and necessary in the 1997 judgment is to file an application for a modification of the medical benefits award based on a change in condition pursuant to La. R.S. 23:1310.8(B). See Fox v. Reynolds Industrial Contractors, 44,938 (La. App. 2 Cir. 1/27/10), 33 So.3d 895, 901, writ denied. 2010-0676 (La. 5/28/10), 36 So.3d 250. In this proceeding, the School Board has not attempted to demonstrate a change in Mrs. Rodrigue's circumstances justifying a modification of the 1997 award of medical expenses. Accordingly, its motions to modify the 1997 judgment to require Mrs. Rodrigue to submit requests for treatment and care adjudicated in the 1997 judgment through the Medical Treatment Guidelines procedures was properly denied by the WCJ.
We next address the parties' attacks on the language of the judgment pertaining to the Reimbursement Schedule. In 1987, the Legislature enacted La. R.S. 23:1034.2, directing the OWC to establish and promulgate a Reimbursement Schedule for drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state. The Reimbursement Schedule shall include charges limited to the mean of the usual and customary charges for care, service, treatment, drugs, and supplies. La. R.S. 23:1034.2(C). In 1993, the OWC promulgated the Reimbursement Schedule, found in Title 40, Part 1 of the Louisiana Administrative Code. The intent of the Reimbursement Schedule is to limit to the mean of the usual and customary charge for all fees for medical services, supplies, and other non-medical services delivered to workers' compensation claimants. LAC 40:1.5101(A). Fees for covered services in excess of the amounts allowable under the schedule are not recoverable against the employer, insurer, or employee. LAC 40:1.5101(B)(1).
Mrs. Rodrigue attacks language in the judgment requiring that for the 20 items adjudicated as reasonable and medically necessary in the 1997 judgment, she or her healthcare provider must submit bills and expenses to the School Board so that it may adjust the bills according to the Reimbursement Schedule and make payments directly to the healthcare provider. Mrs. Rodrigue argues that there were no limiting conditions in the 1997 judgment regarding how expenses were to be handled and points out that for the past 18 years, she has incurred expenses, paid for them, and submitted the bills to the School Board by categories for reimbursement. She contends the complained of language places limitations and conditions on her rights that were not imposed in the 1997 judgment and as such, constitutes an impermissible substantive change of the 1997 judgment over which the WCJ had no jurisdiction to make. Accordingly, Mrs. Rodrigue demands that such language be declared null and stricken from the judgment.
The School Board takes issue with that portion of the judgment that allows Mrs. Rodrigue to continue to pay expenses not generated by a healthcare provider directly and submit those bills to the School Board for reimbursement. It argues that La. R.S. 23:1034.2 applies by it terms to "any nonmedical treatment recognized" under Louisiana law. The School Board maintains that this portion of the judgment conflicts with current law and permits Mrs. Rodrigue to "side-step" the reimbursement process clearly laid out by law.
*713 The Reimbursement Schedule was enacted and promulgated prior to the 1997 judgment giving rise to the School Board's obligation to provide Mrs. Rodrigue with the items adjudicated therein to constitute reasonable and necessary medical care and expenses. The 1997 judgment is silent as to the precise method by which the School Board was to fulfill its obligation to provide for Mrs. Rodrigue's continuing reasonable and necessary medical care and expenses. Thus, the requirement in the judgment under review that the reimbursement be carried out in accordance with the Reimbursement Schedule cannot be considered a substantive change in the 1997 judgment, and hence, is not barred by the application of the principles of res judicata.
However, we find that the portion of the judgment decreeing in effect that the Reimbursement Schedule does not apply to any of the adjudicated items where no healthcare provider is involved is overbroad and subject to misinterpretation. The Reimbursement Schedule applies by its terms to "non-medical" treatments. A healthcare provider has prescribed 20 items as reasonable and medically necessary for Mrs. Rodrigue; however, there are very few items adjudicated in the 1997 judgment that would have to be obtained directly from a healthcare provider. Arguably, under the language of the judgment, the School Board would not be entitled to adjust the cost of any of the items listed in the 1997 judgment pursuant to the Reimbursement Schedule.
We believe it is proper to strike that portion of the judgment[5] pertaining to the Reimbursement Schedule and replace it with the following decree:
To the extent that the Reimbursement Schedule covers any item adjudicated as medically reasonable and necessary in the 1997 judgment, the School Board shall be entitled to adjust the cost of the item pursuant to the Reimbursement Schedule. However, these items are not subject to unitization review absent a change in condition.
CONCLUSION
Based on the foregoing, we maintain the appeal and amend the judgment to strike language therefrom. Judgment is rendered permitting the School Board to adjust the costs of items adjudicated in the 1997 judgment to the extent authorized by the Reimbursement Schedule. In all other respects, the judgment appealed from is affirmed. Costs of this appeal are assessed to appellant Lafourche Parish School Board.
APPEAL MAINTAINED; AMENDED AND RENDERED; AS AMENDED AFFIRMED

The WCJ ordered the School Board to pay $16,079.36 in outstanding medical and related expenses, penalties in the sum of $99,000.00, and attorney's fees in the amount of $13,507.94. Rodrigue I.

In Rodrigue II, in upholding the attorney fee award, this court stressed that it was clear from the record that the School Board repeatedly failed to honor its obligation under the March 20, 1997 judgment to pay Mrs. Rodrigue's "continuing reasonable and necessary medical care and expenses as recommended by Dr. Rea." In refusing to review the penalty award, this court relied on the "law of the case doctrine," observing that in Rodrigue I, an award of multiple penalties against the School Board in a very similar factual situation was upheld. Rodrigue II, 909 So.2d at 634-35.

At the hearing on the School Board's motion to modify the judgment, the School Board complained that Dr. Rea is not licensed to practice in Louisiana and is 81 years-old, making it reasonable to anticipate that Mrs. Rodrigue will not be treating with Dr. Rea at some point in time and should that situation arise, it would be appropriate to require Mrs. Rodrigue's treatment to be reviewed by the carrier followed by utilization review.

We note that Mrs. Rodrigue's appeal appears to attack language in the judgment decreeing that items not already adjudicated in the 1997 judgment would be subject to the Medical Treatment Guideline procedure as an impermissible substantive change in the judgment placing limitations and conditions on her that were not part of the original judgment. We disagree. The 1997 judgment adjudicated 20 items to be reasonable and medically necessary; any treatment falling outside the scope of that judgment could not be considered to have been adjudicated therein. Accordingly, any new recommendation for items outside the scope of the 1997 judgment are subject to the Medical Treatment Guidelines procedure, as it would be operating prospectively, not retroactively, to any new recommendations.

The following language in the March 27, 2017 judgment clarifying and amending the October 31, 2016 is stricken from the judgment: "For the [items adjudicated in the 1997 Final Judgment], Employee Elaine Rodrigue or the healthcare provider must submit the medical bills and expenses to Lafourche Parish School Board so that it may adjust the bills per the Louisiana workers' compensation fee [schedule] and make payments directly to the healthcare provider. If not for a healthcare provider, claimant may pay directly and submit the bills to defendant for reimbursement."